99 N.J. Super. 184 (1968)
239 A.2d 22
JAMES P. BOWLER, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
FIDELITY & CASUALTY COMPANY OF NEW YORK, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1967.
Decided February 8, 1968.
*186 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Robert C. Gruhin argued the cause for appellant and cross-respondent.
Mr. Stanley G. Bedford argued the cause for respondent and cross-appellant (Messrs. Mead, Gleeson, Hansen & Pantages, attorneys).
*187 The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiff James P. Bowler appeals from a judgment of dismissal in favor of defendant Fidelity & Casualty Company of New York on his claim for total and permanent disability benefits under a policy of insurance issued by defendant. Defendant cross-appeals from that portion of the judgment which denied its motion to dismiss the complaint "on the grounds of the statute of limitations" and ordered it to make payment to plaintiff for an additional week of total disability.
The policy in question was entitled "Maximum Benefit Accident Policy," and was dated January 24, 1949. It provided coverage for two types of disability, "total" and "total and permanent", as well as for other losses not here relevant. As to the former, the policy provided:

"Total Disability
Article 2. If the Insured suffers total disability that within thirty days from the date of the accident continuously prevents the Insured from performing each and every duty pertaining to his occupation, the Company will pay for the period of the said disability, not exceeding two hundred consecutive weeks,
The Weekly Indemnity."
As to the latter it provided:

"Total and Permanent Disability
Article 3. If the insured suffers total disability that within thirty days from the date of the accident continuously prevents the insured from performing each and every duty pertaining to his occupation for the period of two hundred consecutive weeks, and if at the end of the said period the Insured is totally and permanently disabled, as the result of the bodily injury causing the said two hundred weeks' disability, and is thereby permanently incapable of engaging in any occupation or employment for wage or profit, the Company, in addition to the Weekly Indemnity paid under Article 2, will pay an amount equal to the
Weekly Indemnity for 600 Weeks." (Emphasis added)
In each case the weekly indemnity was $50.
The provision of the policy referable to proof of loss provided:
*188 "7. Affirmative proof of loss must be furnished to the Company at its said office in case of claim for loss of time from disability within ninety days after the termination of the period for which the Company is liable, and in case of claim for any other loss, within ninety days after the date of such loss."
The policy also provided:
"14. No action at law or in equity shall be brought to recover on this policy prior to the expiration of forty days after proof of loss has been filed in accordance with the requirements of the policy, nor shall such action be brought at all unless brought within two years from the expiration of the time within which proof of loss is required by the policy."
This was modified by a further provision which read:
"2. If any time limitation of this policy with respect to commencing an action at law or in equity is less than that permitted by the law of the state in which the Insured resides at the time this policy issued, such limitation is hereby extended to agree with the minimum period permitted by such law."
Plaintiff became disabled on January 31, 1954 when he accidentally broke his leg and subsequently developed osteomyelitis. He was paid the weekly indemnity up to November 25, 1957, a period of 199 weeks. On May 24, 1964 he filed his present suit to recover the balance (one week) claimed to be due him for total (article 2) disability as well as payment for his total and permanent (article 3) disability. Defendant answered, denying that plaintiff had been totally disabled for the full 200 weeks or that he was totally and permanently disabled within the policy requirement at the end of the 200 week period. As special defenses it pleaded both the six-year statute of limitations, N.J.S. 2A:14-1, and plaintiff's failure to institute suit within the time period prescribed in the policy.
Thereafter, defendant moved for an order dismissing the complaint or limiting the period for which plaintiff might recover on the grounds that (1) the action was not commenced within two years after the time fixed by the policy *189 for the submission of proof of loss, and (2) it was not commenced within the six-year period of limitation provided by N.J.S. 2A:14-1. Plaintiff moved, returnable at the same time, to amend the complaint to invoke the equitable jurisdiction of the court to restrain defendant, on the ground of estoppel, from taking advantage of the statute of limitations by reason of "the acts of the defendant, and the course of action executed and designed by said defendant commencing with its willful and deliberate failure to pay the 200th consecutive week of disability, and its act subsequent thereto."
In a letter opinion dated January 14, 1966 the trial judge found that plaintiff was entitled to payment of the weekly indemnity for the 200th week of article 2 disability. He denied both defendant's motion to dismiss and plaintiff's motion to amend the complaint, but granted leave to plaintiff to set up the claimed estoppel in a reply.
Thereafter defendant filed a motion for reargument on the grounds referred to above and on the further ground of plaintiff's failure to comply with provision 7 of the policy which required that proof of loss be filed within 90 days after occurrence of the loss. Following reargument, the trial judge, in a letter opinion dated May 5, 1966, held, in effect (as we gather from the language of the opinion), that defendant was equitably estopped from asserting the "lack of formal notice" (proof of loss) as a bar to plaintiff's right to payment of the 200th weekly payment under article 2 but that plaintiff was barred from recovery "with regard to the claim of coverage under article 3." Judgment was thereupon entered awarding plaintiff the weekly indemnity for the 200th week of his disability but dismissing the complaint as to his claim for total and permanent disability benefits under article 3.
Since it was supported by answers to interrogatories, plaintiff's deposition and the testimony of one of defendant's employees, defendant's motion came within the summary judgment rule, R.R. 4:58. Proceedings under that rule are designed to provide a prompt, business-like and inexpensive means of disposing of a cause where warranted. While they *190 are not to be used as a vehicle for the trial by affidavit of issues involving disputed facts, where it palpably appears that there is no genuine issue of material fact presented, it is for the court to determine the motion on the applicable law. Rothman v. Silber, 90 N.J. Super. 22, 33 (App. Div. 1966), certification denied 46 N.J. 538 (1966). In passing upon such a motion all papers supporting it are to be carefully scrutinized and those opposing it indulgently treated to the end that all doubts are to be resolved in favor of the opponent of the motion. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954). Here the facts on which the parties relied relative to the above issues were not in substantial dispute.
Briefly summarized, it was and is plaintiff's contention that having filed proof of loss at the inception of his disability and submitted from time to time such additional proofs as were thereafter required of him by defendant, and having presented himself for physical examination by defendant's doctors whenever requested, he was under no obligation to file an additional or separate proof of loss covering his claim for total and permanent disability under article 3. Defendant contended that the statute of limitations barred plaintiff's claim under both articles 2 and 3. It also urged that its liability to plaintiff under article 3 varied substantially from that under article 2, hence it was entitled to a proof of loss referable to the former before it became obligated to make payment thereunder.
We turn first to consideration of defendant's appeal from the summary judgment awarding payment to plaintiff for the 200th week of his article 2 disability. As to this, the trial judge found that though plaintiff had engaged in some work prior thereto, he was totally disabled in the sense that he was unable to engage in his usual occupation, and this sufficed for recovery under that article.
As noted, the accident which gave rise to plaintiff's disability occurred on January 31, 1954. It is undisputed that he thereafter filed a timely and sufficient proof of loss (claimant's *191 statement) with the company and that additional proofs were submitted from time to time (about every five weeks) during the first 199 weeks. The last of these, although not dated, was received contemporaneously with a supporting statement from plaintiff's attending physician. Both were stamped by defendant as received on November 26, 1957. It is immaterial for the purpose of this opinion whether, as contended by defendant, they were received one day earlier in its Newark office and thereafter transmitted to the New York office where they were stamped. The accompanying statement by plaintiff's physician, dated November 25, 1957, recited that plaintiff's disability "continued to date." Following an examination of plaintiff by him on November 26, 1957, defendant's own physician reported to defendant (by letter dated December 2, 1957) that:
"[T]his man has a very bad leg which will ultimately require amputation. In spite of this however, at this time he walks with the aid of a cane and has a long leg brace and is capable of doing some type of work."
Thus, there was ample factual support for a finding (which defendant does not dispute on this appeal) that plaintiff was totally disabled for the week in question (November 26-December 3, 1957).
Defendant challenges the trial judge's implied finding that it was estopped from taking advantage of the statute of limitations as a bar to plaintiff's recovery for the 200th week. It argues that (1) the facts before the court, considered in the light most favorable to plaintiff, failed to spell out an estoppel, and (2) even if they did, they afforded no excuse for plaintiff's failure to institute suit within the six-year period. We consider these points in inverse order.
The statute, N.J.S. 2A:14-1, required that plaintiff's suit be instituted within six years from the time his cause of action accrued, i.e., when he was in a position to institute suit to recover the amount allegedly due him. Under the terms of the policy he was precluded from instituting suit *192 for a period of 40 days after the proof of loss had been filed. Assuming, as plaintiff claims, that the proof of loss was effectively filed by November 26, 1957, or that, as found by the court, defendant was estopped from denying that it was so filed, the cause of action accrued 40 days thereafter or on January 5, 1958. Thus, plaintiff was required to institute suit within six years thereafter. As noted, suit was not brought until May 24, 1964. Unless the defendant was precluded by estoppel from taking advantage of the bar of the statute, plaintiff's failure to sue until after the six-year period had expired would bar recovery.
Under our system of jurisprudence a party may be prevented from pleading the statute of limitations if by his conduct it would be inequitable to permit him to do so. Freeman v. Conover, 95 N.J.L. 89 (E. & A. 1920). Estoppel, as distinguished from waiver, rests "upon the principle that where anyone has done an act, or made a statement, which it would be a fraud on his part to controvert or impair, because the other party has acted upon it in the belief that what was done or said was true, conscience and honest dealing require that he be not permitted to repudiate his act or gainsay his statement." Ibid., at p. 93. Application of the rule does not require a showing of intentional deceit. It denies to a party the right to repudiate an act or position assumed where such repudiation would work injustice to another who rightfully relies thereon. West Jersey Title, etc., Co. v. Industrial Trust Co., 27 N.J. 144, 153 (1958); Rickenbach v. Noecker Shipbuilding Co., 66 N.J. Super. 580, 587 (Ch. Div. 1961).
Plaintiff's claim to equitable estoppel is based upon the following facts: (1) defendant issued its check in the sum of $250 on November 25, 1957 in payment of disability for the period from October 22 to November 25, 1957; (2) the check bore a notation that it was for an "interim payment" and that the case was not "closed"; (3) a proof of loss was filed at defendant's New York office on November 26, 1957, verifying the fact that plaintiff's disability continued, and *193 (4) this was confirmed by an examination of plaintiff by defendant's doctor which took place on November 26, 1957, the results of which were reported to defendant under date of December 2, 1957. There is, however, no offer of proof, and no contention made, that anything was said or done by any representative of defendant from that time onward on which plaintiff could reasonably have relied in refraining from commencing action on the policy.
Giving to plaintiff every favorable inference to be drawn from the foregoing facts, there appeared no justification for the delay of six years and four months which ensued. Even were it conceded that the cited acts of defendant could be deemed to have led plaintiff to believe that his claim would be paid without the necessity of his submitting further proof, it would not excuse the delay in the institution of suit. There was no such concealment of plaintiff's rights as prevented him from instituting suit within the statutory period. Tortorello v. Reinfeld, 6 N.J. 58, 67 (1950). We do not agree with the contention, implicit in plaintiff's argument, that the statute was tolled until he had satisfied himself that defendant would not pay without suit  it began to run on the day that he legally could have brought suit on his claim. In the absence of a waiver of the statute or conduct which estopped defendant from invoking it, any right which plaintiff possessed came to an end before the institution of the present suit. It follows that the entry of judgment in favor of plaintiff was in error.
We turn next to consideration of plaintiff's appeal from the dismissal of that portion of his claim seeking recovery under article 3. While we are not clear as to whether the trial judge based the dismissal upon the bar of the limitations statute or upon the plaintiff's failure to file a new proof of loss, if the judgment is sustainable upon either ground it must be affirmed. Stackenwalt v. Washburn, 42 N.J. 15, 24 (1964); Standard Accident Ins. Co. v. Allstate Ins. Co., 72 N.J. Super. 402, 411 (App. Div. 1962).
*194 We are satisfied that plaintiff's omission to institute suit for article 3 benefits within the six-year period fully sustains the action of the trial judge. Assuming, arguendo, plaintiff's contention that the proofs of loss already filed were a sufficient compliance with the policy terms, he could have instituted suit 40 days after November 26, 1957, i.e., on January 5, 1958 (or by January 12, 1958 at the latest). In the absence of facts which would support an equitable estoppel, the statute then began to run and was not tolled or suspended thereafter. Freeman v. Conover, above, 95 N.J.L., at p. 91. As noted, supra, the facts adduced afford no basis for such an estoppel.
Plaintiff urges, however, that even if the statute be held to apply, defendant's obligation was to pay the amount stipulated in weekly installments; hence only those payments which had come due more than six years prior to the institution of suit would be barred. However, a fair reading of the policy compels agreement with defendant's contention that one lump sum payment was called for, payable at the end of the 200th week.
By the policy terms defendant agreed to pay at the end of the 200-week period "an amount equal to the weekly indemnity for 600 weeks" (emphasis ours). A comparison with other provisions of the policy makes it clear that this provision envisioned payment in one lump sum. Article 2 required that the total disability to which it referred "continuously" prevent the insured from performing each and every duty pertaining to his occupation and obligated the company to pay "for the period of such disability * * * The Weekly Indemnity" (emphasis ours). Article 3 contains no such limitation but provides that if (1) plaintiff suffers total disability which within 30 days after the accident prevents him from performing the duties of his occupation, (2) this condition continues for 200 weeks continuously, (3) at the end of said period he is totally and permanently disabled as the result of the injuries which caused said 200 weeks disability, so that he (4) "is thereby permanently incapable of engaging in any *195 occupation or employment for wage or profit," the payment is to be made. There is no provisio whereby the payment is limited to the weeks during which plaintiff will be disabled thereafter, or whereby the company may terminate payments in the event that total and permanent disability, as therein defined, ceases. It more closely resembles article 1, which provides for payment "in one sum" of the principal sum ($5,000) for loss of life, and of a sum equal to the weekly indemnity for a specified number of weeks for loss of sight or various types of dismemberment. Article 2 more closely resembles article 4, which provides for payment for a period not exceeding 52 consecutive weeks at a fraction of the weekly indemnity, for partial disability.
The obligation of defendant was to pay "an amount equal to" the weekly indemnity for 600 weeks. Webster's New International Dictionary (2d ed., unabridged 1950) defines amount as:
"1. The sum total of two or more sums or quantities; the aggregate; as, the amount of 7 and 9 is 16; the amount of this year's revenue.
2. Accounting. A principal sum and the interest thereon.
3. The whole effect, substance, value, significance, or result.
4. A quantity; as, a surprising amount of patience. Syn.  Total, lot. see Sum."
It has been held to mean the sum total of two or more sums or quantities, the aggregate; the whole quantity; a totality. Los Angeles Brewing Co. v. Los Angeles, 8 Cal. App.2d 379, 48 P.2d 65, 69 (App. Ct. 1935). Its often used synonym, a sum, when used as a noun, has been defined to mean an amount or aggregate, a total or aggregate of things, the aggregate of two or more things taken together, the result of two or more units added. 83 C.J.S. Sum 787-788 (1953). Here the amount or sum payable was to be "equal to" the weekly indemnity for 600 weeks. It is clear that, giving effect to all the words used, this contemplated a lump sum payment. To accomplish the result urged by plaintiff, the words "an amount equal to" would have to be declared superfluous.
*196 We accordingly hold that the judgment of dismissal was properly entered. These conclusions render it unnecessary to consider the additional points raised.
The judgment in favor of defendant is affirmed; that in favor of plaintiff is reversed and the case remanded for the entry of judgment thereon in favor of defendant.
No costs.