295 N.J. Super. 613 (1996)
685 A.2d 975
PATRICIA BARRETT AND JAMES BARRETT, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1996.
Decided December 13, 1996.
*614 Before Judges LONG, SKILLMAN and A.A. RODRIGUEZ.
Anthony F. Malanga, Jr. argued the cause for appellants (Gaccione, Pomaco & Beck, attorneys; Mr. Malanga, Jr., of counsel; Matthew C. Hurley, on the brief).
Brian G. Steller argued the cause for respondent (Connell, Foley & Geiser, attorneys; Mr. Steller, of counsel; Thomas A. Sparno, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
*615 On July 29, 1990, plaintiff Patricia Barrett (Barrett) was injured in an accident while a passenger in an automobile owned by Marilyn Brette and operated by Edward Brette. At the time of the accident, Barrett had a personal automobile policy with defendant New Jersey Manufacturers' Insurance Company (NJM), which provided $100,000 of underinsured motorist (UIM) coverage. The Brettes were also insured by NJM under a policy which provided $500,000 of UIM coverage. The alleged tortfeasor had an automobile policy which provided $100,000 of combined single limit liability coverage.
In addition to Barrett, three other persons filed personal injury claims against the alleged tortfeasor. All of the claimants, including Barrett, submitted their claims to nonbinding arbitration. The arbitrators placed a value of $75,000 upon Barrett's claim and an aggregate value of $225,000 upon the remaining claims. Thereafter, the insurer for the alleged tortfeasor offered to settle Barrett's claim for $25,000, which reflected Barrett's 25% share of the arbitration awards against the tortfeasor.
On March 24, 1994, Barrett's counsel sent a letter to NJM which stated in pertinent part:
I am writing to you pursuant to Longworth v. Van Houten, 223 N.J. Super. 174 [538 A.2d 414] (App.Div. 1988) to advise you of the offer of settlement of the sum of $25,000.00 from the tortfeasor to the Barretts.... Pursuant to Longworth, kindly advise the undersigned in writing as to whether my clients may issue a release to the tortfeasors for their pro rata share of the settlement in the amount of $25,000.00.
On April 26, 1994, Barrett's counsel sent another letter to NJM which stated in pertinent part:
[P]lease be advised that [NJM] also insured [the Brettes] under policy number FA7439748 on the date of the accident, July 29, 1990. In this regard, the Barretts' UIM claim will be pro rated between the Brette's policy and Patricia Barrett's policy pursuant to statutory law.
Kindly contact the undersigned at your earliest convenience to confirm that the Barretts' UIM claim will be pro rated between the two policies, and advise as to what documents you will need to adjust the Barretts' UIM claim.
*616 On May 13, 1994, Barrett's counsel sent yet another letter to NJM which stated in pertinent part:
I have yet to receive a response from you with regard to our Longworth letter of March 24, 1994, and my follow-up letter of April 26, 1994 with regard to the above referenced matter.
I would appreciate it if you would respond immediately upon receipt of this letter in order that I may resolve one way or the other the offer of settlement from the JUA, the carrier for the tortfeasor, Parikh, with regard to the liability claim of my clients.
There is one amendment to the amount that is going to be paid by the JUA; enclosed please find copy of a letter dated May 5, 1994 from Richard L. Hess, Jr., Esq., indicating that the JUA $100,000.00 single limit policy was not intact as everyone thought, but has remaining the sum of $90,283.63. Based upon that fact, the amount that has been offered to my client is in the amount of $22,570.91.
This letter apparently resulted in NJM extending oral approval to Barrett's proposed settlement with the tortfeasor for the revised settlement amount of $22,570.91. Consequently, on May 23, 1994, Barrett's counsel sent another letter to NJM which stated:
This is to confirm our telephone conversation of May 18, 1994 wherein you advised that, subject to your supervisor's confirmation, that you were going to permit my clients, Patricia and James Barrett, to accept the offer of $22,575.42 from the tortfeasors in connection with the above referenced accident, which represents 25% of the outstanding policy of the tortfeasors in the amount of $90,283.63 as indicated to you in prior correspondence from me.
I would appreciate it if you would sign the enclosed copy of this letter and return it to me by facsimile transmission indicating the consent of [NJM] to the forwarding of a release executed by Mr. and Mrs. Barrett, a copy of which I enclose for your reference and review.
In the event [NJM] permits the release to be tendered, I would appreciate it if you would contact my office at your earliest convenience in order to discuss settlement of the pending UIM claim of the Barretts.
On June 10, 1994, a claims representative for NJM sent a letter to Barrett's counsel which stated:
I am responding to your letter of 05/13/94. It is our position that you may accept the settlement offer from the tortfeasor. Please provide me with all medical reports and specials so I can evaluate this claim.
On June 15, 1994, Barrett's counsel sent another letter to NJM which stated:
This is to confirm our telephone conversation of June 9, 1994 wherein you advised that the Barretts' UIM claim will be handled by [NJM] under the primary *617 coverage of the Brette vehicle UIM endorsement, with the Barretts' policy being secondary or excess coverage.
This is to further confirm that you will be setting up the UIM claim and will have an adjuster contact me with regard to same.
This is to further confirm that the UIM limits for the Brette vehicle is $500,000 single limit.
Thereafter, Barrett's counsel furnished NJM with Barrett's medical records relating to the accident, and NJM had Barrett examined by an orthopedic surgeon. After unsuccessfully attempting to settle her UIM claim, Barrett asked that the matter be submitted to arbitration. However, before an arbitration hearing could be conducted, the Supreme Court decided Aubrey v. Harleysville Ins. Cos., 140 N.J. 397, 658 A.2d 1246 (1995). NJM then took the position that Barrett was not entitled to any UIM benefits because the UIM coverage provided under her own personal automobile policy did not exceed the liability coverage provided under the tortfeasor's policy.
Barrett filed this declaratory judgment action to establish that NJM is obligated to pay UIM benefits up to the limits of coverage provided under the Brettes' policy. The matter was brought before the trial court by cross motions for summary judgment. In support of her motion, Barrett argued, among other things, that she had detrimentally relied upon NJM's assurances that her UIM claims would be honored and that NJM was estopped from now denying coverage.
The trial court rejected all of Barrett's arguments and granted summary judgment in favor of NJM. Barrett appeals from this summary judgment, arguing that the Brettes' policy with NJM specifically makes her an insured for the purposes of UIM coverage, that Aubrey is distinguishable from this case, that NJM should be estopped from relying upon Aubrey to deny her UIM benefits, and that Aubrey should be given prospective application only.
We conclude that NJM's authorization to Barrett to settle her claim against the tortfeasor and its implicit agreement to pay Barrett UIM benefits now estops NJM from denying UIM benefits *618 on the basis of the Court's decision in Aubrey. This conclusion makes it unnecessary for us to consider Barrett's other arguments.
An insurance company which expressly or impliedly acknowledges that its policy provides coverage for a particular claim may be estopped from subsequently denying coverage if an insured has relied upon the availability of that coverage. Doto v. Russo, 140 N.J. 544, 557-60, 659 A.2d 1371 (1995); Griggs v. Bertram, 88 N.J. 347, 355-64, 443 A.2d 163 (1982); Merchants Indem. Corp. v. Eggleston, 37 N.J. 114, 126-30, 179 A.2d 505 (1962). In fact, even an insurer which does not acknowledge coverage may be estopped by an "[u]nreasonable delay in disclaiming coverage, or in giving notice of the possibility of such a disclaimer." Griggs v. Bertram, supra, 88 N.J. at 357, 443 A.2d 163; see also Breitenbach v. Motor Club of Am. Ins. Co., 295 N.J. Super. 328, 685 A.2d 36 (App.Div. 1996). This form of estoppel "does not require a showing of intentional deceit." Bowler v. Fidelity & Casualty Co. of N.Y., 99 N.J. Super. 184, 192, 239 A.2d 22 (App.Div. 1968), rev'd on other grounds, 53 N.J. 313, 250 A.2d 580 (1969). Instead, such an estoppel simply "denies to a party the right to repudiate an act or position assumed where such repudiation would work injustice to another who rightfully relies thereon." Ibid.; see also West Jersey Title & Guar. Co. v. Industrial Trust Co., 27 N.J. 144, 153, 141 A.2d 782 (1958). Although "[t]he strongest and most frequent situation giving rise to such an estoppel is one wherein a carrier undertakes to defend a lawsuit based upon a claim against its insured," Griggs v. Bertram, supra, 88 N.J. at 356, 443 A.2d 163, an insurer also may be estopped by other forms of conduct acknowledging coverage upon which an insured justifiably relies. Thus, the Court held in Doto v. Russo, supra, that an insurer was estopped from denying UIM coverage for an accident after it repeatedly gave assurances for a period of three years that such coverage was afforded. The Court reached this conclusion even though, insofar as its opinion indicates, the only form of reliance on these assurances by either *619 the purchaser of the policy or the claimant was the expectancy of the availability of UIM benefits.
In this case, Barrett received a letter from one of NJM's claims representatives that at least implicitly acknowledged her entitlement to the UIM coverage provided under the policy issued to the Brettes. This letter was written in response to Barrett's repeated requests for NJM's approval of the proposed settlement of her claim against the alleged tortfeasor pursuant to the procedures set forth in Judge Pressler's opinion in Longworth v. Van Houten, 223 N.J. Super. 174, 538 A.2d 414 (App.Div. 1988) and subsequently adopted by the Supreme Court in Rutgers Casualty Ins. Co. v. Vassas, 139 N.J. 163, 171-75, 652 A.2d 162 (1995). One of the purposes of these procedures is to provide an injured party with "an opportunity both to assert liability against the tortfeasor and to determine the liability of the UIM insurer." Id. at 175, 652 A.2d 162. Consequently, if an insurer authorizes acceptance of a tortfeasor's settlement offer pursuant to the Longworth procedures, it constitutes at least an implicit acknowledgment of the availability of UIM coverage upon which the injured party should be entitled to rely. Such reliance may take the form not only of the expectancy of receipt of UIM benefits but also of foregoing the opportunity to pursue a recovery from the tortfeasor in excess of the insurance company's settlement offer. For example, Barrett agreed to accept a settlement offer of $22,575.42 for a claim which an arbitrator had valued at $75,000, thereby relinquishing her right to a trial which could have resulted in a verdict that would have entitled her to a greater share of the tortfeasor's liability coverage as well as the opportunity to execute upon his personal assets. In addition, Barrett had to undergo a physical examination conducted on behalf of NJM and had a reasonable expectancy that she would receive UIM benefits for a period in excess of a year. Therefore, we conclude that Barrett's justifiable reliance upon NJM's authorization to settle her tort claim estops NJM from denying UIM coverage on the basis of Aubrey.
*620 Accordingly, the summary judgment in favor of NJM is reversed and the case is remanded to the trial court for entry of an order requiring Barrett's UIM claims to be submitted to arbitration.