846 A.2d 617 (2004)
368 N.J. Super. 356
Theodore PRICE, Plaintiff-Respondent,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 2004.
Decided April 12, 2004.
*619 Stephen O. Mortensen, argued the cause for appellant (Mortensen and Pomeroy, attorneys; Daniel J. Pomeroy, Springfield and Karen E. Heller, on the brief).
John R. Gorman, New Brunswick, argued the cause for respondent (Lutz, Shafranski, Gorman and Mahoney, attorneys; Mr. Gorman, on the brief).
Before Judges WEFING, COLLESTER and FUENTES.
*618 The opinion of the court was delivered by
FUENTES, J.A.D.
Defendant New Jersey Manufacturers Insurance Company (NJM) appeals from an order of the Law Division directing it to submit to uninsured motorist (UM) coverage arbitration in connection with a claim filed by plaintiff, Theodore Price. The court found that NJM's course of conduct had lulled plaintiff's attorney into a false sense of having timely made a UM claim. We agree and affirm.[1]
On August 30, 1995, plaintiff, while in the course of his employment, was involved in an auto accident as a pedestrian. The vehicle that struck him was uninsured. NJM had issued an automobile insurance policy to plaintiff during the time period encompassing the accident. The UM coverage section of the policy provides as follows:
ARBITRATION
A. If we and an insured do not agree:
1. Whether that insured is legally entitled to recover damages; or
2. As to the amount of damages which are recoverable by that insured; from the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle, then the matter may be arbitrated.

....
Either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.
[Emphasis added.]
Thus, in order to invoke the arbitration provisions there must first be a disagreement as to either (1) the threshold issue of entitlement to recover damages or (2) the amount of the claim. If either one of these conditions precedent exists, "[e]ither party may make a written demand for arbitration."
By letter dated February 12, 1998, plaintiff's counsel wrote to NJM advising it of the accident and enclosing documents which revealed that the tortfeasor was uninsured. The letter concludes as follows:
Therefore, my client will be presenting an uninsured motorist claim arising from this accident. Please establish an uninsured motorists claim file and ask that adjuster to contact me as soon as possible.
NJM acknowledged receipt of the February 12, 1998 letter "putting [it] on notice of a potential uninsured motorist claim." NJM assigned a file number to the case *620 and requested information concerning (1) the amount of the workers' compensation lien (operating under the assumption that such a case had been filed and settled) and (2) plaintiff's injuries.
Two months later, NJM's claims representative sent another letter to plaintiff's counsel emphasizing that the case was "some three years old" and again requesting information as to any lien. Forty days thereafter, plaintiff's counsel responded by forwarding the information requested to "allow you [NJM] to begin to evaluate this claim...." The letter also advised NJM that a suit had been filed against the tortfeasor to "protect" [NJM's] subrogation rights. The letter further requested that NJM advise whether it intended to pursue the subrogation action. "If you do not, [the letter continued] I presume you have no objection to my dismissing the suit." Approximately three months later, NJM authorized plaintiff's counsel to dismiss the complaint against the tortfeasor.
On October 8, 1998, a newly assigned NJM claims representative wrote to plaintiff's counsel requesting information as to the "status of this matter," medical bills and reports and a copy of plaintiff's insurance declaration sheet to verify his tort threshold. The letter closed by advising counsel to contact the claims representative if he "wish[ed] to discuss any aspect of this claim." In response thereto, on February 8, 1999, plaintiff's counsel sent NJM copies of medical treatment records. Three months later, NJM scheduled plaintiff to be examined by its own physician.
By letter dated August 6, 1999, NJM directed plaintiff's counsel to notify plaintiff's employer "with regard to the above noted claim" and requested a copy of the employer's workers' compensation policy. On September 14, 1999, plaintiff underwent the physical examination arranged by NJM for the purpose of ascertaining the extent of his injuries and the progress he had made in treatment. Despite numerous demands, NJM refused to provide plaintiff's counsel with copies of the report of the physical examination. In response, plaintiff's counsel sent NJM a letter dated April 3, 2000, which included the following passage:
New Jersey Manufacturers had my client examined by Dr. Bosniak for his UM claim. Under Rincon v. Delapaz, 279 N.J.Super. 682, 653 A.2d 1205 (App. Div.1995), I am entitled to a copy of Dr. Bosniak's report. Your refusal to provide a copy is baseless.
I will object to any attempted use of Dr. Bosniak's report at arbitration or at trial, if necessary. My client will not submit to any further medical examinations for this UM claim.
NJM responded by letter dated April 13, 2000, standing by its position.
The next piece of correspondence between the parties is a letter from plaintiff's counsel to NJM dated January 15, 2001, transmitting a medical report. Two other letters from counsel followed on March 1, 2001 and April 5, 2001 enclosing plaintiff's employment records relative to the 1995 accident, medical treatment records, a workers' compensation lien letter from plaintiff's employer and a medical authorization form signed by plaintiff.
The last correspondence sent by NJM to plaintiff's counsel was dated August 21, 2001, just nine days from the six-year anniversary of the accident. The letter began by thanking counsel for his past cooperation, and requested the following additional documentation: (1) plaintiff's workers' compensation file; (2) plaintiff's employer's "policy language regarding their UM limits and exposure to this loss"; and (3) original MRI films dated December 20, 1996, February 12, 1998 and November 20, 1998.
*621 Plaintiff's counsel sent NJM the requested documentation via letter dated September 20, 2001. Contrary to its practice in this case, NJM did not acknowledge receipt of this letter. In fact, NJM failed to acknowledge or otherwise respond to four more letters sent by plaintiff's counsel after the six-year anniversary of the accident. Specifically:
(1) Letter dated October 1, 2001 enclosing employment related information.
(2) Letter dated March 27, 2002 enclosing additional employment related information.
(3) April 23, 2002 transmitting a copy of medical report from plaintiff's treating physician.
(4) Letter dated September 27, 2002 transmitting a copy of report from plaintiff's workers' compensation-approved treating orthopedist. This letter closed with a request by plaintiff's counsel for NJM to "re-open this file and begin evaluating it for settlement...." (Emphasis added).
Against this factual backdrop, the Law Division held that NJM was precluded from asserting a statute of limitations defense because "plaintiff had no reason to believe that defendant would refuse the coverage, thereby requiring him to file a formal demand for arbitration."
An insured has six years from the date of the accident to assert a UM claim. Green v. Selective Ins. Co. of Am., 144 N.J. 344, 354, 676 A.2d 1074, 1080 (1996). The last day within the statutory limitation period here was August 30, 2001. In Mortara v. Cigna Prop. & Cas. Ins. Co., 356 N.J.Super. 1, 3-4, 811 A.2d 458, 460 (App. Div.2001), aff'd, 174 N.J. 566, 811 A.2d 404 (2002), we held that "[a] claim must be commenced by filing a complaint and is not commenced by writing letters or negotiating with one's adversary."
There is no question here that plaintiff did not make a formal written demand for arbitration or commence litigation seeking arbitration within six years of the date of the accident. What we must decide is whether the insurer's course of conduct should equitably toll the running of the statute.
The doctrine of equitable tolling has traditionally been applied in situations where a claimant has actively pursued a judicial remedy by filing a technically defective pleading during the statutory period or "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435, 444 (1990) (footnote omitted) (emphasis added), quoted in Freeman v. State, 347 N.J.Super. 11, 31, 788 A.2d 867, 879-80 (App.Div.), certif. denied, 172 N.J. 178, 796 A.2d 895 (2002); Villalobos v. Fava, 342 N.J.Super. 38, 50, 775 A.2d 700, 707 (App.Div.), certif. denied, 170 N.J. 210, 785 A.2d 438 (2001); Dunn v. Borough of Mountainside, 301 N.J.Super. 262, 280, 693 A.2d 1248, 1258 (App.Div.1997), certif. denied, 153 N.J. 402, 709 A.2d 795 (1998).
Thus, an insurer can be estopped from invoking the statute of limitations if it has engaged in wrongful conduct causing a plaintiff's claim to be subject to the statute's bar. In order to successfully invoke the application of the doctrine of equitable tolling, an insured must show that the insurer has lulled him into a false sense of security by representing that a claim will be amicably settled without the need for litigation. Howard v. W. Jersey & Seashore R.R. Co., 102 N.J.Eq. 517, 523, 141 A. 755, 757-58 (Ch.Div.1928), aff'd o.b., 104 N.J.Eq. 201, 144 A. 919 (E. & A.1929); see also Friedman v. Friendly Ice Cream Co., 133 N.J.Super. 333, 336 A.2d 493 (App.Div.1975).
*622 Here, it is beyond question that NJM had a contractual right to investigate this claim by requesting plaintiff's medical and workers' compensation records. NJM also had the right to request that plaintiff submit to an independent medical examination by a physician of its own choosing. However, when such an investigation turns into a three-year odyssey and shows all of the signs of a duly accepted claim, NJM has a duty to place its insured on written notice, using direct and unequivocal language, that such an investigation does not toll the running of the applicable statute of limitations. Absent such notice, equity demands that the running of the statute be tolled to preclude the insurer from reaping the benefits of its own misconduct.
We find support for this conclusion in Griggs v. Bertram, 88 N.J. 347, 443 A.2d 163 (1982) where an insurer, despite receiving timely notice of a potential claim, waited over a year to notify its insured of its decision to deny coverage based on the policy's intentional torts exclusion. Under these circumstances, the Supreme Court held that the insurer was estopped from denying coverage. In so doing, the Court declared:
Upon the receipt from its insured of a claim or notification of an incident that may give rise to a claim, an insurer is entitled to a reasonable period of time in which to investigate whether the particular incident involves a risk covered by the terms of the policy. But once an insurer has had a reasonable opportunity to investigate, or has learned of grounds for questioning coverage, it then is under a duty promptly to inform its insured of its intention to disclaim coverage or of the possibility that coverage will be denied or questioned.
Unreasonable delay in disclaiming coverage, or in giving notice of the possibility of such a disclaimer, even before assuming actual control of a case or a defense of an action, can estop an insurer from later repudiating responsibility under the insurance policy.
[Griggs v. Bertram, supra, 88 N.J. at 357, 443 A.2d at 168 (citations omitted). See also Barrett v. New Jersey Mfrs. Ins. Co., 295 N.J.Super. 613, 618, 685 A.2d 975, 977-78 (App.Div. 1996), certif. denied, 150 N.J. 29, 695 A.2d 671 (1997).]
In Mortara v. Cigna Prop. & Cas. Ins. Co., supra, 356 N.J.Super. at 4, 811 A.2d at 460, we declined to apply the doctrine of equitable tolling in the context of an underinsured motorist claim (UIM) because any reliance by plaintiff on the insured's conduct could not be said to have caused his failure to comply with the statute of limitations. This stands in sharp contrast to the facts here.
The record here supports the Law Division's finding that NJM's conduct lulled plaintiff and his counsel into believing that the UM claim had been properly asserted. First, NJM received notice of the claim well within the statutory time period. Second, NJM actively investigated the claim by repeatedly corresponding with plaintiff's counsel to request information. Third, plaintiff cooperated fully with the investigation, responding to every request for information in a reasonably prompt manner. Fourth, plaintiff asked for and received authorization from NJM to dismiss the cause of action against the tortfeasor, which was expressly instituted to protect NJM's subrogation rights. Fifth, NJM continued to request information on the claim up to nine days before the running of the statute, giving no indication to plaintiff's counsel that anything else needed to be done. Sixth, plaintiff's counsel continued to send documents and other information over a year after the expiration of the statutory limitations period, *623 without any indication from NJM that it had decided to reject the claim because of the running of the statute.
Like all contracts, insurance contracts have an implied covenant of good faith and fair dealing. However, an insurer has an even greater duty than the insured to act fairly and in good faith. Edwards v. Prudential Prop. & Cas. Co., 357 N.J.Super. 196, 203, 814 A.2d 1115, 1119 (App.Div.), certif. denied, 176 N.J. 278, 822 A.2d 608 (2003). NJM breached this duty here by stringing along its insured for a period of over three years, while creating the appearance, by both word and deed, that all was well with his UM claim, and it was just a matter of gathering and processing the required information. Once the six-year limit was reached, NJM's heretofore inviting conduct turned into stone silence and plaintiff was left to wonder what he had done wrong. This tactic of investigation by ambush cannot be judicially countenanced through a mechanical application of the statute of limitations.
We conclude our analysis by briefly responding to some of the points raised by the dissent. Our dissenting colleague finds no fault in NJM's conduct in part because NJM "was not dealing with an insured proceeding pro se but rather with its insured's attorney." An insurer's duty to act in good faith is embodied in the contract of insurance by operation of law. Under the dissent's analysis, we would create two standards of acceptable conduct by an insurer, one for the individual dealing directly with an insurer and one for the person who acts through his or her lawyer. We reject the notion that an insurer's duty to act in good faith is lessened when it interacts with its insured's legal representative.
The dissent also finds our reliance on Griggs v. Bertram, supra, to be misplaced because the Court in Griggs was addressing a situation where coverage was denied based on the policy's exclusions, as opposed to the statute of limitations. This extremely narrow reading of Griggs overlooks the legal principle articulated therein. The wrong that Griggs readdresses is the prejudice caused to the insured by the insurer's unreasonable delay in notifying its insured of its decision to disclaim a timely presented claim. We see no reason why the insurer's legal duty to act with reasonable dispatch should not be extended to a UM investigation, where information is being gathered and reviewed, not to dispute coverage, but to ascertain the amount of compensation.
Under these circumstances, we deem requiring the insurer to dispel any misconception by notifying its insured that the investigation does not toll the running of the statute of limitations to be an insignificant imposition, when balanced against the catastrophic consequences that a lack of notice may have to the insured's rights.
Affirmed.
WEFING, J.A.D., Dissenting.
My colleagues have concluded that the trial court correctly ordered defendant New Jersey Manufacturers Insurance Company (NJM) to proceed to uninsured motorist arbitration with plaintiff. I am unable to agree and therefore dissent.
The facts are relatively uncomplicated. Plaintiff was involved in an accident on August 30, 1995, when he was struck by a motor vehicle that was driven by an uninsured driver. That date commenced the running of the two-year statute of limitations for a tort action, as well as the six-year statute of limitations for a contract action seeking uninsured motorist (UM) benefits under his own policy of insurance with NJM. Mortara v. Cigna Prop. & Cas. Ins. Co., 174 N.J. 566, 811 A.2d 404 (2002); *624 Green v. Selective Ins. Co. of Am., 144 N.J. 344, 354, 676 A.2d 1074, 1080 (1996). It is not disputed that plaintiff did not commence such an action seeking UM benefits until November 22, 2002, more than seven years after the accident and more than a year after the period of limitations had expired.
My colleagues invoke the doctrine of equitable tolling to achieve their result. They note, however, that equitable tolling is appropriate when a party "has been induced or tricked by his adversary's misconduct." (Op. at 362, 846 A.2d at 621.) They acknowledge that equitable tolling requires that "an insured must show that the insurer has lulled him into a false sense of security by representing that a claim will be amicably settled without the need for litigation." (Op. at 363, 846 A.2d at 621.) Having reviewed this record, I can find no trickery or misconduct on the part of NJM. Nor do I consider that it did anything that could reasonably be characterized as having "lulled plaintiff into a false sense of security." Finally, my colleagues do not address how to calculate the tolling of this statutory limitations period, what commenced the tolling period, and when the statutory period would start to run again.
Plaintiff's counsel wrote to NJM on September 20, 2001, shortly after the statutory limitation period had expired. My colleagues appear to attribute some design to NJM's failure to acknowledge receipt of that letter, stating this was "contrary to its practice in this case." (Op. at 361, 846 A.2d at 621.)
According to the record before us, eighteen pieces of correspondence were exchanged between plaintiff's counsel and NJM beginning February 12, 1998, when plaintiff's counsel told NJM that his client would be presenting a UM claim, and that September 20, 2001, letter. Of those eighteen, twelve are from plaintiff's counsel, six from NJM. NJM had no "practice" of acknowledging receipt of every letter.
According to my colleagues, NJM acted to "string along" its insured and engaged in "investigation by ambush." (Op. at 365, 846 A.2d at 623.) Plaintiff, however, made no demand upon NJM during that entire period and I am unable to perceive how plaintiff would reasonably have come to the conclusion that an amicable resolution of the value of his injuries would be reached.
My colleagues rely upon Griggs v. Bertram, 88 N.J. 347, 443 A.2d 163 (1982), and Barrett v. New Jersey Mfrs. Ins. Co., 295 N.J.Super. 613, 685 A.2d 975 (App.Div. 1996), certif. denied, 150 N.J. 29, 695 A.2d 671 (1997). In my judgment, neither bears upon the question presented here and neither supports the conclusions reached. In Griggs, the Supreme Court was addressing an insurer's duty to promptly notify an insured that the conduct at issue was excluded from coverage. No question of a limitations period was involved. In Barrett, Judge Skillman, writing for our court, held defendant insurer was estopped from withdrawing its previous recognition of a UIM claim based upon an intervening Supreme Court decision which had arguably worked a change in the law.
My colleagues appear to posit a duty on the part of defendant to inform plaintiff and his counsel that its receipt of correspondence and request for information does not toll the statutory period of limitations and that its failure to do so deprives it of the protection of the statute. I am entirely uncertain as to the source of such a duty and can perceive no reason why one should be imposed in this instance, in which NJM was not dealing with an insured proceeding pro se but rather with its insured's attorney.
*625 Within the course of their opinion, my colleagues refer to our statement in Edwards v. Prudential Prop. & Cas. Co., 357 N.J.Super. 196, 203, 814 A.2d 1115, 1119 (App.Div.), certif. denied, 176 N.J. 278, 822 A.2d 608 (2003), that an insurer has an even greater duty than its insured to act fairly and in good faith. It should be noted, however, that in that case, we concluded that an insurer has no duty to notify its insured of additional benefits under the policy to which the insured might be entitled. Id. at 204, 814 A.2d at 1120. In addition, it is also significant that in reaching our conclusion in Edwards, we cited Miller v. Keystone Ins. Co., 636 A.2d 1109 (Pa.1994), and summarized its holding to be that the carrier did not act in bad faith by failing to advise its insured of the statute of limitations provision in the no-fault policy absent a factual basis to invoke the doctrine of equitable estoppel.
The New Jersey Supreme Court only recently affirmed the statement that a UM claim is asserted by filing a complaint, not by writing letters or negotiating. Mortara, supra, 174 N.J. 566, 811 A.2d 404, aff'g 356 N.J.Super. 1, 4, 811 A.2d 458, 460 (App.Div. 2001). That case, moreover, presented an even more compelling instance for equitable estoppel, for one of the carriers had originally agreed to submit to UM arbitration and thereafter changed its position. We held equitable estoppel inapplicable, however, and the Court agreed and affirmed. Here, moreover, in contrast with Mortara, plaintiff never even commenced negotiations with NJM.
Because I consider plaintiff's November 2002 complaint and order to show cause untimely, I would reverse the order of the trial court.
NOTES
[1] In support of its ruling, the Law Division relied in part on an unpublished opinion from this court. Unpublished opinions do not have precedential value. R. 1:36-3. Our decision here does not constitute an implicit approval of the reasoning and holding of that unpublished opinion. It is well settled that a trial court's order or judgment may be affirmed for reasons other than those expressed by the judge. Ellison v. Evergreen Cemetery, 266 N.J.Super. 74, 78, 628 A.2d 793, 795-96 (App. Div.1993).