968 A.2d 1223 (2009)
406 N.J. Super. 640
Linda A. BORITZ, Plaintiff-Appellant,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, Defendant-Respondent.
No. A-4929-07T3
Superior Court of New Jersey, Appellate Division.
Argued February 3, 2009.
Decided April 27, 2009.
*1224 Michael J. Gaffney, Mount Laurel, argued the cause for appellant (Radano & *1225 Lide, attorneys; Melville D. Lide, on the brief).
Robert M. Kaplan, Camden, argued the cause for respondent (Margolis Edelstein, attorneys; Mr. Kaplan, on the brief).
Before Judges WINKELSTEIN, GILROY and CHAMBERS.
The opinion of the court was delivered by
WINKELSTEIN, P.J.A.D.
Plaintiff, Linda Boritz, was injured in a traffic accident while a passenger in an automobile driven by Sally Iacono. She appeals from a Law Division order limiting her claim for underinsured motorist (UIM) benefits based on a "step-down" clause in a policy defendant New Jersey Manufacturers Insurance Company (NJM) issued to Iacono. The policy has a UIM limit of $100,000. The step-down clause capped plaintiff's entitlement to UIM benefits at $25,000, the coverage limit in her own automobile insurance policy issued by the Government Employees Insurance Company (GEICO).
Plaintiff does not challenge the validity of the step-down clause, but asserts that NJM should be estopped from enforcing it. She claims that she would not have settled with the tortfeasor for its $15,000 policy limits had she not been led to believe by NJM, by consenting to her settlement with the tortfeasor for the tortfeasor's policy limits, see Longworth v. Van Houten, 223 N.J.Super. 174, 194, 538 A.2d 414 (App. Div.1988) (insured receiving acceptable settlement offer from tortfeasor should seek consent to settle from UIM carrier), that she would have access to the full $100,000 in UIM coverage available under its policy. The trial court rejected plaintiff's argument and limited her recovery to $10,000, the difference between the $25,000 UIM limit in her GEICO policy and the $15,000 she recovered from the tortfeasor. We reverse.

I.
On October 9, 2005, plaintiff was injured when Iacono's vehicle was stopped at a red light and was struck in the rear by a vehicle owned and operated by Monique Vinson, who was insured by GEICO under a policy with a $15,000 liability limit. Plaintiff's attorney subsequently informed NJM of Vinson's coverage limits, and that plaintiff would look to Iacono's UIM coverage with NJM for additional compensation. Later, in a letter dated October 3, 2006, from a GEICO claims examiner, plaintiff's counsel learned that NJM had policy limits of $100,000. The letter said: "the host vehicle is primary for the UM/UIM coverage. I have contacted NJM ... and they have accepted this claim as a valid claim, also note their limits are $100/$300 in Bodily Injury and I have lower coverage so, therefore, there is no valid [GEICO] UM/UIM coverage for this loss."
Also by letter dated October 3, 2006, Gina Grainey, an NJM claims representative, requested that plaintiff's counsel provide her with "medical reports, specials, your client's policy declaration page verifying their chosen tort threshold, and any other information you feel will assist us in evaluating your client's case." Without mentioning the step-down provision, Grainey confirmed, by telephone with plaintiff's counsel, that the NJM policy coverage was primary, with limits of $100,000 per person, $300,000 per accident.
Approximately two months later, plaintiff's counsel notified NJM that Vinson's insurance company, GEICO, had offered plaintiff the policy limit of $15,000 "in full and final settlement of the claim against [Vinson]." The letter asked for confirmation of NJM's consent to the settlement pursuant to Longworth. In response, *1226 NJM provided plaintiff's counsel with a "Consent to Settle."[1] Plaintiff consequently released Vinson in exchange for payment of her $15,000 policy limits.
From December 2006 through April 2007, plaintiff's counsel negotiated with NJM for UIM benefits. NJM initially offered plaintiff $17,023 to settle her UIM claim. Plaintiff rejected the offer, and counter-offered to settle for $75,000. In response, NJM increased its settlement offer to $32,023.
Meanwhile, although NJM had requested plaintiff's policy declaration page in its letter to plaintiff's counsel on October 3, 2006, NJM did not receive it until May 2007. When it did, and it discovered that plaintiff's UIM limits were $25,000, NJM notified plaintiff's counsel that it would exercise the step-down provision in Iacono's policy, which stated:
A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. However, subject to our maximum limit of liability for this coverage:
1. If:
a. An insured is not the named insured under this policy;
b. That insured is a named insured under one or more other policies providing similar coverage; and
c. All such other policies have a limit of liability for similar coverage which is less than the limit of liability for this coverage;
then our maximum limit of liability for that insured, for all damages resulting from any one accident, shall not exceed the highest applicable limit of liability under any insurance providing coverage to that insured as a named insured.
Because plaintiff's GEICO UIM coverage had a $25,000 limit and plaintiff had recovered $15,000 from the tortfeasor, NJM thus limited the available UIM coverage to $10,000.
Plaintiff filed this declaratory judgment action against NJM, claiming she was entitled to a UIM coverage limit of $85,000  the NJM UIM policy limit of $100,000, less her $15,000 recovery from the tortfeasor. On cross-motions for summary judgment, plaintiff argued that had she been aware that the NJM UIM limits would be $25,000, rather than $100,000, she would not have settled with the tortfeasor but would have sought recovery from the tortfeasor's personal assets.
The Law Division rejected plaintiff's estoppel argument and granted defendant's motion for summary judgment. The court found that plaintiff did not detrimentally rely on NJM's consent to settle.

II
An "insurance policy is an agreement that `set[s] forth in fundamental terms, the general outlines of coverage.'" Hardy v. Abdul-Matin, 198 N.J. 95, 102, 965 A.2d 1165 (2009) (quoting Weedo v. Stone-E-Brick, 81 N.J. 233, 237, 405 A.2d 788 (1979)). The premium paid for insurance coverage "does not buy coverage for all ... damage but only for that type of damage provided for in the policy." Ibid. "[I]n the absence of a statutory prohibition to the contrary, an insurance company has a right to impose whatever conditions it desires prior to assuming its obligations." Royal Ins. Co. v. Rutgers Cas. Ins. Co., 271 N.J.Super. 409, 419, 638 A.2d 924 (App.Div.1994). "Absent enunciation by the legislature of a contrary rule or a contrary strong public policy recognized in case law, courts have enforced `other insurance' *1227 provisions [included in other policies] as written." Prudential Prop. & Cas. Ins. Co. v. State Farm Ins. Co., 306 N.J.Super. 315, 320, 703 A.2d 692 (App. Div.1997).
"A `step-down' clause is a contractual device inserted in an auto insurance policy." Olkusz v. Brown, 401 N.J.Super. 496, 498, 951 A.2d 1069 (App.Div.2008). These clauses have been held enforceable "even though they may result in differential treatment of similar plaintiffs based on the existence of other available insurance." Pinto v. N.J. Mfrs. Ins. Co., 183 N.J. 405, 412, 874 A.2d 520 (2005), superseded in part by N.J.S.A. 17:28-1.1(f) (prohibiting step-down provisions in policies naming corporate or business entities as insureds). The step-down clause at issue here limits the amount of UIM coverage available to an insured, other than the named insured, to the amount of UIM coverage provided in that insured's own auto policy. Plaintiff contends that NJM is barred from exercising this step-down provision under a theory of estoppel.
"`Estoppel is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law.' The doctrine is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment." Marsden v. Encompass Ins. Co., 374 N.J.Super. 241, 249, 863 A.2d 1133 (App.Div.) (quoting Casamasino v. Jersey City, 158 N.J. 333, 354, 730 A.2d 287 (1999)), certif. denied, 183 N.J. 257, 872 A.2d 799 (2005). To establish a claim of estoppel, a party must prove, by a preponderance of the evidence,
that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further, the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment.
[Miller v. Miller, 97 N.J. 154, 163, 478 A.2d 351 (1984).]
See also Barrett v. N.J. Mfrs. Ins. Co., 295 N.J.Super. 613, 618, 685 A.2d 975 (App. Div.1996) (estoppel may only be invoked when the party seeking estoppel has justifiably relied on the actions of the other party), certif. denied, 150 N.J. 29, 695 A.2d 671 (1997).
Although a party seeking to invoke estoppel must demonstrate reliance to his or her detriment or prejudice, Merchants Indem. Corp. v. Eggleston, 37 N.J. 114, 129, 179 A.2d 505 (1962), under certain circumstances, prejudice may be presumed. Griggs v. Bertram, 88 N.J. 347, 358, 443 A.2d 163 (1982) (finding that when insurance carrier, after receiving timely notice and adequate opportunity to investigate a claim, fails for an unreasonable time to inform the insured of a potential disclaimer, insurance company estopped from later denying coverage); see also Sneed v. Concord Ins. Co., 98 N.J.Super. 306, 318-19, 237 A.2d 289 (App.Div.1967) (observing that prejudice may be presumed whether insurer controls defense after institution of an action or before suit is filed); but see Reliable Newspaper Delivery, Inc. v. Maryland Cas. Co., 131 N.J.L. 424, 426, 37 A.2d 40 (E. & A.1943) (finding no prejudice, and consequently no estoppel, by "mere delay in giving the information as to noncoverage").
In support of her estoppel argument, plaintiff primarily relies on Barrett, supra, 295 N.J.Super. 613, 685 A.2d 975. There, the plaintiff sustained injuries while a passenger in a vehicle involved in an accident. Id. at 615, 685 A.2d 975. The tortfeasor's automobile insurance policy provided $100,000 of combined single limit liability coverage. Ibid. Four individuals, including the plaintiff, filed personal injury *1228 claims against the tortfeasor and submitted their claims to non-binding arbitration. Ibid. The arbitrators placed a total aggregate value of $300,000 on the claims, valuing the plaintiff's claim at $75,000. Ibid.
The tortfeasor subsequently offered the plaintiff $25,000 to settle, which reflected her twenty-five percent share of the award. Ibid. Both the plaintiff and the owner of the vehicle in which the plaintiff was riding had personal policies containing UIM coverage through NJM. Ibid. Accordingly, the plaintiff's counsel requested and received a consent to settle letter from NJM. Id. at 615-16, 685 A.2d 975.
Later, while NJM was evaluating the plaintiff's claim under the owner's policy, the Supreme Court decided Aubrey v. Harleysville Insurance Companies, 140 N.J. 397, 405, 658 A.2d 1246 (1995), which held that "[t]he right to recover UIM benefits depends on the UIM limits chosen by the insured."[2] Relying on Aubrey, NJM took the position that the plaintiff was not entitled to UIM benefits under the owner's policy because the benefits provided under her personal policy did not exceed the liability coverage available under the tortfeasor's policy. Barrett, supra, 295 N.J.Super. at 617, 685 A.2d 975. The plaintiff argued that NJM was estopped from denying her claim because she had detrimentally relied upon NJM's consent to settle as an assurance that it would provide coverage. Ibid.
The trial judge granted summary judgment in favor of NJM. Ibid. On appeal, we reversed, finding that "[a]n insurance company which expressly or impliedly acknowledges that its policy provides coverage for a particular claim may be estopped from subsequently denying coverage if an insured has relied upon the availability of that coverage." Id. at 618, 685 A.2d 975. We added that "even an insurer which does not acknowledge coverage may be estopped by an `[u]nreasonable delay in disclaiming coverage, or in giving notice of the possibility of such a disclaimer.'" Ibid. (quoting Griggs, supra, 88 N.J. at 357, 443 A.2d 163). Holding that NJM was estopped from denying the plaintiff coverage, we observed that the consent to settle letter "at least implicitly acknowledged [the plaintiff's] entitlement to the UIM coverage provided under the policy issued to the [owners]." Id. at 619, 443 A.2d 163.
We construe Barrett, along with Eggleston and Sneed, to mean that estoppel arises when the plaintiff justifiably relies on the UIM carrier's consent to settle and releases the tortfeasor in return for the tortfeasor's policy limits. Reliance may take the form not only of the expectancy of receipt of UIM benefits, but "also of foregoing the opportunity to pursue a recovery from the tortfeasor in excess of the insurance company's settlement offer." Barrett, supra, 295 N.J.Super. at 619, 685 A.2d 975. That loss of opportunity itself constitutes prejudice.
"Under certain circumstances an insurance carrier may be estopped from asserting the inapplicability of insurance to a particular claim against its insured despite a clear contractual provision excluding the claim from coverage of the policy." Griggs, supra, 88 N.J. at 355-56, 443 A.2d 163. This case presents one of those circumstances.
*1229 Two primary reasons inform our conclusion that NJM is estopped from enforcing the step-down provision. First, NJM is estopped because it confirmed to plaintiff's counsel that the UIM coverage limit was $100,000. Plaintiff was entitled to rely on that representation to forego the opportunity to seek redress from the tortfeasor personally.[3]
The second reason involves a carrier's duty of good faith. Although plaintiff does not assert that NJM intentionally misled her to believe that the UIM limits were $100,000, an insurer's duty of good faith is more than simply an obligation not to act in bad faith. See Bowers v. Camden Fire Ins. Ass'n, 51 N.J. 62, 79, 237 A.2d 857 (1968) (lack of good faith does not necessarily signify malicious conduct or ill will, but simply means insurer failed to discharge fiduciary obligation inherent duty to act in good faith in settlement of claims). The duty of good faith "is a broad concept. Whether it was adhered to by the carrier must depend upon the circumstances of the particular case.... The boundaries of good faith will become compressed in favor of the insured depending on those circumstances." Am. Home Assurance Co. v. Hermann's Warehouse Corp., 117 N.J. 1, 7, 563 A.2d 444 (1989) (internal quotations omitted).
When an insurance carrier receives a Longworth request to settle, good faith requires the carrier to advise the injured party of the potential setoff in the policy afforded by the step-down provision before the injured party settles with the tortfeasor. The purpose of the Longworth notice is, among other things, to "apprise[ ] the UIM insurer of pending litigation by one of its insureds, which may obligate it to provide UIM coverage under the insured's policy." Rutgers Cas. Ins. Co. v. Vassas, 139 N.J. 163, 175, 652 A.2d 162 (1995). The Longworth notice gives the UIM carrier an opportunity "to weigh the relative merits of allowing its insured to settle and paying the difference in UIM benefits compared with paying its insured the settlement offer plus UIM benefits and itself maintaining a subrogation action against a tortfeasor." Ibid.
In weighing the merits of an injured party's Longworth request to settle with a tortfeasor, a carrier is, or should be, aware of its coverage limits. When a step-down clause is implicated, the carrier, like NJM here, should know that its UIM coverage limits are constrained by that provision. And just as coverage limits are important to the carrier, they are perhaps even more critical to an injured party's decision whether to settle for the tortfeasor's policy limits in exchange for releasing the tortfeasor from liability. From an injured party's perspective, knowing the UIM policy limits may have as significant an influence upon that party's decision to settle as knowing whether the insurance carrier provides UIM coverage in the first instance. Applying these principles here, NJM is estopped from invoking what is otherwise a valid step-down provision.
NJM asserts that it was not in a position to inform plaintiff that the step-down clause would be enforced until it received plaintiff's insurance declaration sheet, which it had requested from plaintiff's counsel on October 3, 2006. Consequently, NJM claims that it was unaware that the step-down provision in Iacono's policy would be triggered until it received that information. The record does not support that argument. In its October 3 letter, NJM requested plaintiff's policy declaration *1230 page in order to "verify[ ] [plaintiff's] chosen tort threshold," not to make a determination whether to invoke the step-down provision of the policy.
More significantly, however, we reject the argument because, as we have determined, NJM was in a position to inform plaintiff that the $100,000 UIM limit could be reduced depending upon whether plaintiff had her own UIM coverage. Had plaintiff received that information, she would have known that the maximum available UIM coverage would be $25,000, less the tortfeasor's policy limits, and would have been able to make an informed decision whether to release the tortfeasor in return for the tortfeasor's $15,000 policy.
Accordingly, we conclude that the UIM limit available to plaintiff is $85,000 (the $100,000 policy limit less the $15,000 the injured party received from the tortfeasor), subject to any other defenses that would otherwise be available to NJM.
Reversed and remanded.
NOTES
[1] The "Consent to Settle" letter is not included in the appendix on appeal.
[2] In Pinto, supra, the Court noted that "[l]ater decisions `rejected the proposition that Aubrey limited a claimant's eligibility for and entitlement to UIM coverage only to that provided in his or her personal auto policy in circumstances when the claimant was also entitled to UIM coverage under another applicable policy.'" 183 N.J. at 410, 874 A.2d 520 (quoting Pinto v. N.J. Mfrs. Ins. Co., 365 N.J.Super. 378, 390, 839 A.2d 134 (App.Div. 2004)).
[3] We do not address, as it has not been briefed, what effect, if any, plaintiff's counsel's failure to review the NJM policy before settling with the tortfeasor has on plaintiff's justifiable reliance on NJM's consent to settle. See Pressler, Current N.J. Court Rules, comment 4 on R. 2:6-2 (issue not briefed deemed abandoned).