863 A.2d 1133 (2005)
374 N.J. Super. 241
Arlene MARSDEN, Plaintiff-Respondent,
v.
ENCOMPASS INSURANCE CO., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 2004.
Decided January 12, 2005.
*1134 Edward J. Rebenack, New Brunswick, argued the cause for appellant (Hoagland, Longo, Moran, Dunst & Doukas, attorneys; John C. Simons, of counsel; Joseph V. Leone, on the brief).
Joel I. Rachmiel, Springfield, argued the cause for respondent.
Before Judges NEWMAN, R.B. COLEMAN and HOLSTON, JR.
The opinion of the court was delivered by
NEWMAN, J.A.D.
Defendant Encompass Insurance Company (Encompass) appeals from an order compelling the submission of an underinsured motorist claim (UIM) to three-party motorist arbitration. We affirm.
The facts are not in dispute. Plaintiff, Arlene Marsden, sustained personal injuries in a car accident caused by tortfeasor, Carol Farley (Farley or tortfeasor), on July 10, 1999. Farley was insured through Prudential Insurance Company, with liability policy limits of $100,000/$300,000. Plaintiff was covered by a policy issued by defendant Encompass, which provided UM/UIM limits of $250,000/$500,000.
On December 5, 2000, plaintiff filed suit against Farley. On May 30, 2001, plaintiff filed an Amended Complaint, adding a per quod claim on behalf of her husband, Robert Marsden.
In non-binding arbitration on March 15, 2002, plaintiff was awarded $250,000, well over the tortfeasor's policy limits of only $100,000. On March 20, 2002, plaintiff forwarded to defendant a Longworth[1] notice of a potential UIM claim.
On April 8, 2002, defendant notified plaintiff that "in order for [them] to determine whether or not [she] ha[d] a valid underinsured motorist claim, [they] need to obtain the following:" proof of tortfeasor's policy limits and offer of settlement; copy of the filed suit papers, discovery and arbitration award; complete package of specials including loss wage verification; and diagnosis and medical history.
Plaintiff complied with defendant's request in a letter of April 16, 2002, confirming the $250,000 arbitration award, but notifying defendant a trial de novo was filed by tortfeasor. Plaintiff enclosed the award and a copy of the trial notice, as well as, answers to defendant's interrogatories and a copy of plaintiff's deposition transcript.
Following a verbal authorization, defendant through its claims supervisor, on July 8, 2002, confirmed that it waived "any future subrogation right[s]" and authorized plaintiff's settlement with the tortfeasor for the $100,000 policy limit. Believing that the UIM claim would either be settled or failing that, submitted to three-party arbitration, plaintiff settled her claim for $90,000 against the tortfeasor during July 2002 and dismissed the underlying lawsuit.
On February 26, 2003, plaintiff's counsel sent a letter to defendant, confirming his phone conversation with claims specialist, Louis Negrin (Negrin), and requesting that defendant review the medical specials that were forwarded on April 16, 2002 and contact counsel to discuss a resolution of the claim. Counsel prefaced his UIM settlement demand of $100,000 by describing the accident and the nature of the injuries in the following terms:

*1135 As can be seen, as a result of this violent rearend impact caused by the negligence of the underinsured tortfeasor, my client sustained an avulsion fracture at C7. Additionally, she sustained disc herniations at L4-5 and C6-7. Both her treating physician and orthopedic surgeon, Dr. Glushakow, and the referred neurosurgeon, Dr. Prada, recommended cervical fusion and laminectomy due to this severe injury. However, due to my client's severe fear of surgery, she has declined, thus far, that procedure.
However, due to continuing complaints and the pressure resulting from these injuries, she is considering that surgery.
Additionally, as a result of this impact and injury, my client was forced into early retirement as indicated in answer 10 to Form A Interrogatories. That early retirement has resulted in a loss of approximately $12,000 in pension per year due to my client's loss of anticipated salary increases when she was unable to return to work due to these injuries.
In a phone conversation of April 23, 2003 with Negrin, defendant claimed for the first time that the policy requires litigation of the UIM claim, rather than arbitration. A few days later, Negrin called plaintiff's counsel back to indicate he was mistaken and that the policy in effect on the date of the accident permitted arbitration and that the claim would be submitted to UIM arbitration. On April 28, 2003, plaintiff's counsel sent a letter to Negrin demanding three-party UIM arbitration.
On July 17, 2003, plaintiff filed a Complaint against defendant seeking to compel UIM arbitration. Plaintiff filed a notice of motion to compel arbitration on September 18, 2003.
On September 30, 2003, counsel for defendant notified plaintiff by letter that defendant did not agree to arbitrate and advised plaintiff to file a complaint in a court of competent jurisdiction. On the same date, defendant's counsel submitted a letter in opposition to plaintiff's motion to compel UIM arbitration. Defendant indicated in its letter that the plaintiff's policy allows it to reject arbitration and choose to have a trial on the UIM claim.
In granting plaintiff's motion, Judge Perfilio found that defendant waived its right to request plaintiff to go to trial because, by its conduct, defendant impliedly consented to an arbitration. The motion judge also suggested that an estoppel could be invoked against defendant from requesting a trial when it led plaintiff to believe that the matter would proceed to arbitration if it was not settled.
On appeal, defendant raises the following issues for our consideration:
POINT I
THE ENCOMPASS UNDERINSURED MOTORIST ENDORSEMENT CONTROLS THE RIGHTS OF MARSDEN AND ENCOMPASS RELATIVE TO MARSDEN'S CLAIMS AND ENTITLEMENT TO UNDERINSURED MOTORIST BENEFITS.
POINT II
THE DOCTRINE OF EQUITABLE ESTOPPEL SHOULD NOT APPLY BECAUSE ENCOMPASS DID NOT ENGAGE IN INTENTIONAL CONDUCT OR CONDUCT WHICH INDUCED MARSDEN TO ACT OR CHANGE HER POSITION TO HER DETRIMENT.
Defendant argues that the Arbitration Clause in plaintiff's policy controls the rights of both parties. Defendant asserts that Section (a) specifically requires defendant to consent to arbitrate the UIM claim, and if it does not consent, then the covered person must file a lawsuit in the proper court against the tortfeasor and defendant. Furthermore, defendant asserts *1136 that, because it changed its mind and no longer agreed to arbitrate, plaintiff must bring a lawsuit in court based on its right not to agree to arbitrate under part (b)(4) of the UIM arbitration clause.
The pertinent parts of the UIM arbitration clause read:
a. Two questions must be decided by agreement between covered person and us:
(1) If the covered person is legally entitled to collect damages from the owner or driver of an uninsured motor vehicle or underinsured motor vehicle ; and
(2) If so, in what amount?
....
(2) If either party does not consent to arbitrate these questions or if the arbitrators selected by each party cannot agree on a third arbitrator, the covered person shall:
(a) File a lawsuit in the proper court against the owner or driver of the uninsured motor vehicle or underinsured motor vehicle and us, or if such owner or driver is unknown, against us; and
....
(3) If the covered person files suit against the owner or driver of the uninsured motor vehicle or underinsured motor vehicle, we have the right to defend on the issues of legal liability and of the damages owed by such owner or driver.
b. If the covered person and the person or organization legally liable for the covered person's bodily injury and/or property damage reach a settlement agreement to pay the covered person such person's limits of liability, the covered person must submit the agreement to us in writing for our approval prior to final execution of such settlement agreement if:
(1) The settlement would not fully satisfy the covered person's claim; and
(2) An Uninsured Motorists Coverage claim has been or will be made against us.
The covered person may file suit against us and the legally liable person if, within 30 days after our receipt of the settlement agreement, we do not:
(1) Approve the settlement;
(2) Waive our rights of recovery against the person or organization legally liable for the bodily injury and/or property damage;
3) Authorize the signing of a full release; and
(4) Agree to arbitrate the Uninsured Motorists Coverage claim.
The suit shall decide:
(1) If the covered person is legally entitled to collect damages; and
(2) If so, how much?
....
Here, defendant was timely notified of the potential UIM claim by plaintiff and given the opportunity to intervene. When the tortfeasor rejected the non-binding arbitration award and filed for a trial de novo, defendant chose not to intervene. When the tortfeasor offered to settle, defendant authorized plaintiff to settle, even though it meant there would be a UIM claim. Defendant agreed to waive its subrogation rights, release the underlying claim, and requested plaintiff to submit medical specials in conjunction with its UIM settlement demand. Subsequently, defendant's agent, Negrin told plaintiff's counsel that defendant would arbitrate the UIM claim. After three months, plaintiff had to file a complaint against defendant and later moved to compel arbitration. Defendant now contends that it never *1137 agreed to arbitrate the UIM claim and, therefore, still had the option to exercise its right to go to trial if the settlement discussions were not fruitful. We disagree.
In our view, defendant did not reserve the trial option in its communications with plaintiff's counsel. More significantly, plaintiff has been prejudiced. Had plaintiff known when she received the Longworth response of July 8, 2002 from defendant's claims supervisor that she would face a trial some time later, plaintiff could have rejected the tortfeasor's settlement offer and had the trial years before and resolved the matter. Plaintiff's counsel pointed out before us, he could have sought to amend his complaint and implead defendant as a party. Or if denied that relief, plaintiff could have reminded defendant that under Zirger v. General Accident Ins. Co., 144 N.J. 327, 342, 676 A.2d 1065, 1073 (1996), it would be bound by the trial result even if it did not intervene because it had been put on notice of the proceedings and could have sought intervention.
In Zirger, our Supreme Court noted "the potential anomaly of the use of arbitration as a supplement to an adjudication in court." Ibid. Arbitration was recognized "as a means of resolving disputes ... that ... is quicker and less expensive than litigation...." Ibid. The Court commented further:
The advantages of arbitration evaporate when arbitration is used not as a substitute for litigation, but as a supplement to litigation. Used in this manner, a procedure designed to expedite dispute resolution is transformed into a mechanism for delaying and obstructing final resolution of disputes....
[Id. at 343, 676 A.2d at 1074.]
What the Court said in Zirger is equally applicable here. Plaintiff expected this case to proceed on an arbitration track if a settlement was not effectuated. In so doing, plaintiff gave up her right to trial, anticipating that the UIM claim would be resolved in a timely and expeditious manner. However, her expectations were derailed by defendant's belated decision not to arbitrate but instead to demand a trial. If defendant intended to exercise its trial option under the arbitration provisions in the policy, it should have expressed its intent on July 8, 2002 at the same time it authorized plaintiff to settle with the tortfeasor, waived its subrogation rights and requested plaintiff's medical specials in connection with plaintiff's UIM settlement demand. Had defendant done so and insisted on a trial in its July 8, 2002 Longworth response, plaintiff could have accommodated defendant by rejecting the tortfeasor settlement and tried the case then and not be faced with the prospect of a trial a few years later. Not only was the "quicker and less expensive" use of arbitration as a means of resolving disputes underminded, but the "overriding public interest in the efficient and expeditious resolution of UM/UIM claims" was thwarted. Zirger, supra, 144 N.J. at 342, 676 A.2d at 1073.
We recognize that in Zirger the Court found it offensive to relitigate issues that had already been tried. While there was no issue of relitigation here, the same legislative goal of timely payments of benefits that UM/UIM coverage was intended to provide would be unreasonably delayed by defendant's conduct. Id. at 344, 676 A.2d at 1074. The difference, at best, is one of degree, and, therefore, the same result should obtain.
Defendant argues that the doctrine of equitable estoppel should not be invoked against it. Defendant asserts that plaintiff should not have relied on its initial agreement to arbitrate because "the unambiguous terms of the policy [permitted] any *1138 claims for underinsured motorists benefits to be tried if either party did not consent to arbitration as a forum for resolving the underinsured issues presented." Defendant further contends that it did not intentionally mislead plaintiff to believe that her claims would be arbitrated. In any event, defendant maintains that plaintiff did not rely on its representations to her detriment and that no harm or prejudice was incurred.
"Estoppel is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law." Casamasino v. City of Jersey City, 158 N.J. 333, 354, 730 A.2d 287, 298 (1999). The doctrine is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment. Mattia v. Northern Ins. Co. of New York, 35 N.J.Super. 503, 510, 114 A.2d 582, 585 (App.Div.1955). The doctrine is invoked in "the interests of justice, morality and common fairness." Palatine I v. Planning Bd. of Township of Montville, 133 N.J. 546, 560, 628 A.2d 321, 328 (1993). Estoppel, unlike waiver, requires the reliance of one party on another. To establish equitable estoppel, plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment. Miller v. Miller, 97 N.J. 154, 163, 478 A.2d 351, 355 (1984).
With respect to whether defendant intentionally misled plaintiff into thinking her claims would be arbitrated, the evidence is inconclusive. However, the evidence is clear that defendant engaged in a course of conduct that under the circumstances induced reliance by plaintiff which was exceedingly detrimental. Plaintiff did rely on defendant's representation to her detriment by settling with the tortfeasor, foregoing any further claims she had against the tortfeasor, and experiencing an unreasonable delay in pursuit of her UIM claim. See Busik v. Levine, 63 N.J. 351, 358-59, 307 A.2d 571, 575, appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). All of this could have been avoided if defendant had voiced its decision to exercise the trial option when it made its Longworth response. Plaintiff would then have had one trial two years earlier against one tortfeasor, binding defendant to the judgment under Zirger. Plaintiff would have had the matter resolved including the UIM claim in a far more timely fashion than under the present scenario.
Were defendant's contention accepted, discovery would have to be forthcoming with a trial in the near future when at least three years have passed since the case could have been resolved. Even if plaintiff were entitled to prejudgment interest, the amended complaint was filed on October 14, 2003 and would not cover the entire period that this matter has been brewing. R. 4:42-11(b). Moreover, interest only compensates for the time money has been withheld. Plaintiff also suffered from the anxiety she endured while awaiting closure to the accident, the resulting injuries, and her claim.
In an analogous context, this court ruled in Barrett v. New Jersey Mfrs. Ins. Co., 295 N.J.Super. 613, 618, 685 A.2d 975, 977-78 (App.Div.1996), certif. denied, 150 N.J. 29, 695 A.2d 671 (1997), that an insurance company which expressly or impliedly acknowledges that its policy provides coverage for a particular claim may be estopped from subsequently denying coverage if an insured has relied upon the availability of that coverage. So too here. Plaintiff has detrimentally relied upon defendant's course of conduct that three-party arbitration would be forthcoming if no settlement of the UIM was effectuated. Had plaintiff known that defendant would *1139 demand a trial instead, plaintiff would have gone to trial against the tortfeasor years before and expeditiously resolved its UIM claim in this rear-end accident case where plaintiff was a passenger in her husband's car.
Under the circumstances, the necessary ingredients to invoke equitable estoppel are present. Defendant is estopped from demanding a trial. The motion judge properly ordered that the matter proceed to three-party arbitration.
Affirmed.
NOTES
[1] Longworth v. Ohio Casualty, 223 N.J.Super. 174, 538 A.2d 414 (App.Div.1988).