879 A.2d 1226 (2005)
379 N.J. Super. 548
Howard WALSH and Mary Walsh, his wife, Plaintiffs,
v.
Nicholas A. MATTERA, Esq., Defendant, and
Brunnock & Fleming, Esqs. and Michele Mordkoff, Esq., Defendants-Third-Party Plaintiffs-Appellants,
v.
Rutgers Casualty Insurance Company, Third-Party Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 2005.
Decided August 23, 2005.
*1227 Glen A. Farrell argued the cause for appellants, (Sachs, Maitlin, Fleming & Greene, West Orange, attorneys; Mr. Farrell and Christopher Klabonski, on the brief).
Susan L. Moreinis, Collingswood, argued the cause for respondent.
Before Judges NEWMAN, R.B. COLEMAN and BILDER.
The opinion of the court was delivered by
R.B. COLEMAN, J.A.D.
On January 16, 2003, plaintiff Howard Walsh (Walsh) filed a complaint in the Law Division, Ocean County, against defendant/third-party plaintiff, Brunnock & Fleming (B & F) alleging legal malpractice in B & F's handling of an underinsured motorist (UIM) claim arising out of a February 16, 1993 accident in New York in which Walsh, a pedestrian who resides in New Jersey, was struck by a taxicab driven by a New York resident and owned by a New York corporation. B & F answered the complaint, denying the breach of any duty owed to Walsh, and filed a third-party complaint against Rutgers Casualty Insurance Company (Rutgers), for a declaration that Rutgers was obligated to Walsh for any UIM claim arising from Walsh's 1993 accident and injuries. In its answer to B & F's third-party complaint, Rutgers asserted as one of its affirmative defenses that the claim for UIM benefits was *1228 barred by the applicable statute of limitations.
At the end of the discovery period, B & F filed a motion for summary judgment against Rutgers asking the court to apply New York's statute of limitations to the claim for UIM benefits and asserting that under the plain language of the policy, Walsh is entitled to UIM coverage. Under New York law, the six-year statute of limitations for a UIM claim does not begin to run until the tortfeasor's liability policy is exhausted and, if that state's law applies, the claim for UIM benefits would be timely. Rutgers filed its opposition to B & F's motion and cross-moved for summary judgment, arguing the New Jersey statute of limitations applies and that it runs from the date of the occurrence. So viewed, the claim for UIM benefits is time barred.
Oral argument was held on December 17, 2004, and in two separate orders entered on that date, the trial court denied B & F's motion for summary judgment and granted Rutgers cross-motion for summary judgment dismissing the claim for UIM benefits.[1] On January 10, 2005, the trial court entered an order staying proceedings on the remaining claim of legal malpractice and adjourning the trial date pending this court's decision on B & F's motion for leave to file an interlocutory appeal. By order dated February 10, 2005, B & F was granted leave to file its interlocutory appeal. We now affirm the trial court's orders denying B & F's motion and granting Rutger's cross-motion on the ground that the UIM claim is barred by New Jersey's six year statute of limitations.
On February 16, 1993, as he was crossing the street at the corner of East 40 Street and Park Avenue in New York City, Walsh was struck by a taxicab that was operated by Henry Pitken (Pitken), a New York City resident, and owned by Splash Transit Corporation (STC), a New York City corporation. Walsh was employed in New York at the time. He was insured under a personal automobile policy issued by Rutgers in New Jersey. That policy included medical expense benefits for the insureds and uninsured motorist/underinsured motorist (UM/UIM) coverage in the amount of $100,000. Walsh was initially treated for his injuries at a New York hospital. Thereafter, he was treated by medical providers in the State of New Jersey. Walsh filed a claim with Rutgers for medical expense benefits pursuant to the New Jersey No Fault Act and further demanded arbitration of such medical expense benefits.
Walsh and his wife, Mary, hired Nicholas A. Mattera (Mattera), a New Jersey attorney with an office in New York, to represent them and a verified complaint on their behalf was filed on February 1, 1996, in New York Supreme Court against Pitken and STC. In July 1998, Mattera informed Walsh that he could no longer handle the case and the matter was referred at Walsh's request to B & F.
On October 10, 2000, prior to the commencement of the trial of the underlying tort action in New York, B & F sent a *1229 letter to Rutgers informing it for the first time of Walsh's intention to pursue a UIM claim. In a letter dated October 26, 2000, Rutgers responded, requesting certain information and stating its belief that the UIM statute of limitations had expired. On October 30, 2000 and November 1, 2000, B & F sent letters to Walsh stating,
As we discussed throughout the trial and on October 18, 2000, I was concerned that your insurance company, Rutgers Casualty, was not sued timely in order to preserve your claim for additional money beyond the $30,000 available from American Transit. We have confirmed that in order to preserve this claim for underinsurance, Rutgers Casualty would have had to been sued by October. Since this was not done by either my firm or Nick Mattera, there is no longer a claim that may be brought against Rutgers Casualty.
Because it had received no response from B & F to its October 26, 2000 letter, Rutgers sent another letter dated December 8, 2000 in which it stated "it appears the UM statute expired on 02/16/99. We were notified of this claim on October 11, 2000. Therefore, your clients are barred from recovery."
At the end of trial on liability in the New York tort action, the judge directed a verdict in Walsh's favor against the cab company and its driver. Thereafter, the damages issue was resolved by the insurer for those defendants paying Walsh $30,000, the amount of their insurance policy limit.
On January 16, 2003, Walsh commenced this civil action in Ocean County against B & F claiming legal malpractice for its failure to have filed a timely UIM claim and B & F now appeals the dismissal of its third-party complaint due to the court's determination that the New Jersey statute of limitations applies, barring the claim for UIM coverage. The motion judge ruled, "This is a case which arises out of a claim made under a New Jersey contract for insurance and that based upon the case law, as well as an analysis of the facts of this particular case, it does appear that although the accident took place in New York that the appropriate Statute of Limitations is the New Jersey Statute of Limitations which runs from the date of the accident."
In its appellate brief, B & F raises the following arguments for our consideration:

POINT I: B & F IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE 6-YEAR STATUTE OF LIMITATIONS FOR UIM CLAIMS EMPLOYED BY THE NEW YORK COURTS SHOULD APPLY IN THE INSTANT MATTER SINCE NEW YORK CLEARLY HAS THE GREATER INTEREST UNDER THE APPLICABLE CHOICE-OF-LAW ANALYSIS.

POINT II: B & F IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE CLEAR AND UNAMBIGUOUS LANGUAGE OF THE RUTGERS POLICY MANDATES PLAINTIFF IS ENTITLED TO ALL COMPENSATORY DAMAGES HE IS "LEGALLY ENTITLED TO RECOVER."

POINT III: ASSUMING ARGUENDO THAT NEW JERSEY'S STATUTE OF LIMITATIONS APPLIES, B & F IS ENTITLED TO SUMMARY JUDGMENT BECAUSE RUTGERS SHOULD BE EQUITABLY ESTOPPED FROM ARGUING THAT IT DID NOT RECEIVE NOTICE OF PLAINTIFF'S UIM CLAIM PRIOR TO THE EXPIRATION OF NEW JERSEY'S STATUTE OF LIMITATIONS SINCE RUTGERS CLEARLY HAD CONSTRUCTIVE NOTICE OF THE CLAIM BEFORE THEN.
Based upon our review of the record and applicable law, we are convinced these arguments lack merit. New York *1230 does not have a greater interest in the critical issue, entitlement to UIM benefits, merely because the accident occurred in New York nor because the vehicle that struck Walsh was registered in New York, driven by a New York resident, and owned by a New York corporation. In the underlying tort action brought by Walsh against Pitken and STC, New York may have a more significant interest than New Jersey in the application of its laws, and that action was tried to completion under New York law. The insurer for the defendants in that action tendered to plaintiff the full policy limit of their policy, $30,000. At issue in this case is whether Walsh's own automobile insurance policy providing $100,000 in UIM coverage is available to him or whether Walsh (or B & F, standing in Walsh's shoes) is barred by the failure to notify Rutgers of the UIM claim within six years of the date of the accident.
Traditionally, the place of contract governs the choice of law unless another jurisdiction has a more significant relationship with the parties and/or transaction. State Farm Mutual Auto. Ins. Co. v. Estate of Simmons, 84 N.J. 28, 37, 417 A.2d 488 (1980). "This rule is to be applied unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield." Ibid. However, our Supreme Court has endorsed a flexible "governmental interest" analysis to determine which state has the greatest interest in governing the specific issue that arises in the underlying litigation. Erny v. Estate of Merola, 171 N.J. 86, 94, 792 A.2d 1208 (2002); Lonza, Inc. v. The Hartford Accident and Indem. Co., 359 N.J.Super. 333, 345, 820 A.2d 53 (App.Div.2003). "Ordinarily, choice-of-law determinations are made on an issue-by-issue basis, with each issue receiving separate analysis." Erny, supra, 171 N.J. at 94, 792 A.2d 1208. Under the governmental interest analysis, the court is required to determine: (1) whether there is an actual conflict between the laws of the states involved; (2) the policy interest that each state has in applying its law to the particular circumstances and parties; and (3) how strongly the contacts involved relate to each state's policy and whether application of one law will further or frustrate the policies of the other state.
There is a conflict between the laws of New York and New Jersey concerning the accrual of a claim for UIM benefits. In New Jersey, uninsured/underinsured motorist claims are governed by a six year statute of limitations that begins to run from the date of the accident. Green v. Selective Ins. Co. of Am., 144 N.J. 344, 354, 676 A.2d 1074 (1996). In Green, our Supreme Court stated, "[The] legislative policy [of requiring the inclusion of uninsured motorist coverage and the availability of underinsured motorist coverage in every automobile insurance policy] seeks to `provid[e] maximum and expeditious protection to the innocent victims of financially irresponsible motorists.'" Id. at 351, 676 A.2d 1074 (quoting Longworth v. Van Houten, 223 N.J.Super. 174, 184, 538 A.2d 414 (App.Div.1988)). The primary purpose of the statute of limitations is to provide defendants a fair opportunity to defend and to prevent plaintiffs from litigating stale claims. Price v. New Jersey Mfrs. Ins. Co., 182 N.J. 519, 524, 867 A.2d 1181 (2005).
In New York, the statute of limitations regarding uninsured motorist claims is also six years but the time does not begin to run until the defendant's insurance is exhausted. Continental Ins. Co. v. Richt, 253 A.D.2d 818, 677 N.Y.S.2d 634 (1998), appeal denied, 93 N.Y.2d 805, 689 N.Y.S.2d 429, 711 N.E.2d 643 (1999). The stated purpose for New York's UIM statute is "that motorists who use public highways be financially responsible to ensure that innocent victims of motor vehicle accidents *1231 be recompensed for their injuries." Allstate Ins. Co. v. Shaw, 52 N.Y.2d 818, 436 N.Y.S.2d 873, 874, 418 N.E.2d 388 (1980). The stated purpose for the statute of limitations in New York is consistent with the purpose of New Jersey's statute of limitation  "to compel the exercise of a right of action within a reasonable time so that a defendant has an opportunity to prepare an adequate defense." Bellini v. Gersalle Realty Corp., 120 A.D.2d 345, 501 N.Y.S.2d 674, 677 (1986).
Thus, while the two are in accord that a six year period of statute of limitations applies to a UIM claim, the point from which that six year period is measured differs. In this case, the parties affected by that difference  the injured plaintiff, plaintiff's former attorney and plaintiff's insurer  are all residents of the State of New Jersey. The New York tortfeasors and their insurer are not affected by the differing date of accrual. The tortfeasors' liability has been conclusively determined and their insurance coverage has been exhausted. The sole issue in dispute at this time is whether the injured victim, a New Jersey resident, is entitled to recover damages from his insurer sums in excess of the tortfeasors' policy limit and whether the UIM benefits under his own insurance policy have been timely invoked.
An analogous but reverse situation was presented in Polarome Mfg. Co., Inc. v. Commerce & Indus. Ins. Co., 310 N.J.Super. 168, 708 A.2d 450 (App.Div.), certif. denied, 155 N.J. 590, 715 A.2d 993 (1998). There a New York chemical manufacturer brought a declaratory judgment action regarding liability coverage under a New York contractor's automobile insurance policy for injuries to an employee of the contractor, alleging negligence that occurred in New Jersey in connection with the unloading of steel drums from a truck. Applying the analysis of State Farm Mut. Auto. Ins. Co. supra, this court found that New York law controlled the issue of indemnification and the claim was time barred. We stated,
Applying the State Farm and Restatement standards, we conclude that New York has the significant governmental and substantial interest here, and New York law should apply. As we have noted, both the insurer and insured are New York residents. The policy contract was executed and the policy was issued in New York. The legitimate expectations of the parties were that the laws of New York would apply, that is, the insurer, CIIC, would receive timely notice of the claim and the insured, National Drum, would be obligated to give such notice. Even Polarome, the claimant here, is a New York resident although it does business in New Jersey. Surely New York's interest in protecting its residents, meeting their contractual expectations and enforcing contracts entered into within its borders outweighs New Jersey's limited interest in this matter.
[Id. at 176, 708 A.2d 450.]
Here, the insurance contract that contains the UIM provision was procured in New Jersey by a New Jersey resident from a New Jersey insurance company. Those factors weigh heavily in favor of applying New Jersey law in that the reasonable expectation of the parties would be that New Jersey law would control. Although New York may have significant interest in applying its law to the accident itself, and to the determination of tort liability and damages, that is not what is in dispute. At issue are the terms of an insurance contract and the requirements for timeliness in giving notice and asserting a UIM claim under the contract. See, e.g., Green, supra, 144 N.J. at 351, 676 A.2d 1074 and Riccio v. Prudential Prop. & Cas. Ins. Co., 108 N.J. 493, 499, 531 *1232 A.2d 717 (1987) (noting the conceptual difference between the nature of a UIM claim and a recovery in tort). The parties would reasonably expect the law of the state where the parties entered into the insurance contract to control.
B & F relies on Erny, supra, to support its contention that New York law should be applied. Such reliance is misplaced. Erny addressed the application of a conflict of law analysis regarding comparative negligence and joint and several liability. In Erny, the Court applied New York law though the accident occurred in New Jersey and though the injured party was a New Jersey resident. Because the two drivers at fault in causing the accident were both New York residents with vehicles insured in New York, New York's interest in the precise issue  joint and several liability  was deemed greater than New Jersey's interest.
In this case, the issue involves the accrual of a claim for UIM coverage, rather than deterrence of the New York driver by imposing liability. The insurance company, the plaintiffs and the insurance contract affected by the UIM coverage issue are all tied to New Jersey. Under such circumstances, New Jersey's strong public policy in reducing the cost of automobile liability insurance would be negatively affected if the time for an insured to assert a claim is enlarged. As the Court observed in Green, supra, 144 N.J. at 354, 676 A.2d 1074, "[t]here should be more than enough time to resolve all issues [in the process of automobile reparations] within six years." The predictability of the insurer's potential exposure would be reduced by an uncertain date of accrual. By contrast, the insurer of the New York parties and those parties themselves would not be impacted by the application of New Jersey's law. Application of New Jersey law would not frustrate the purpose nor the intent of policies underlying New York's UIM statute or statute of limitations.
Both New York and New Jersey seek to promote resolution of UIM claims in an expedited manner, in order that the insured may receive compensation as quickly as possible for injuries and in order that the insurer may be able to defend and properly assess the claim. The reasons for applying New Jersey law, however, are stronger in that it is the place of contracting, negotiations and performance of the subject matter. It is the residence of the affected insured and the insurance company.
B & F contends that Rutgers should be collaterally estopped from asserting a statute of limitations defense. We disagree. Equitable estoppel has been defined by our Court as,
[T]he effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse....
[W.V. Pangborne & Co., Inc. v. New Jersey Dep't of Transp., 116 N.J. 543, 553, 562 A.2d 222 (1989) (quoting Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339, 403 A.2d 880 (1979) (citations omitted)).]
It is a doctrine founded on "the fundamental duty of fair dealing imposed by law" and "designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment." Marsden v. Encompass Ins. Co., 374 N.J.Super. 241, 249, 863 A.2d 1133, certif. denied, 183 N.J. 257, 872 A.2d 799 (2005). It is invoked in "`the interests of justice, morality and common fairness.'" Ibid. (quoting Palatine I v. Planning Bd. *1233 of Township of Montville, 133 N.J. 546, 560, 628 A.2d 321 (1993)).
In Mortara v. Cigna Prop. & Cas. Ins. Co., 356 N.J.Super. 1, 811 A.2d 458 (App. Div.2001), aff'd, 174 N.J. 566, 811 A.2d 404 (2002), plaintiff was injured while driving a school bus that collided with an automobile. Plaintiff was insured at the time under a personal automobile policy that contained $50,000 in UIM coverage and under her employer's policy which provided $1,000,000 in UIM coverage. After receiving partial compensation from the insurance company of the other driver, plaintiff pursued UIM coverage under her policy and under her employer's policy. She filed a complaint and order to show cause within the statute of limitations against both her own insurer and that of her employer seeking UIM coverage. Her own insurance company demanded arbitration. However, after plaintiff dismissed her complaint based on her insurer's promise to arbitrate, the insurer took the position that plaintiff's employer's carrier should be the primary insurer. The employer's carrier also denied coverage, prompting plaintiff to file a complaint against both insurers. The trial court held that complaint was barred by the statute of limitations.
On appeal we affirmed, observing that plaintiff was aware that both insurers were denying coverage within the statute of limitations and therefore could have brought a claim within the statute of limitations. Id. at 3, 811 A.2d 458. We reiterated that a claim is commenced by the filing of a complaint and not by letters or negotiations. Id. at 3-4, 811 A.2d 458. Furthermore, we held that estoppel did not apply, even though the plaintiff's insurance company had initially agreed to arbitrate because "[a]ny reliance by plaintiffs upon Ohio Casualty's initial willingness to arbitrate cannot be said to have caused the plaintiffs' failure to comply with the statute of limitations. After reviewing the record, and considering the requirements for equitable estoppel, we find no reason to invoke estoppel." Id. at 4, 811 A.2d 458.
In Price, supra, the insurer was estopped from denying coverage because it lulled the insured by its conduct over an extended period of time. The Court stated,
The undisputed facts here support an equitable tolling of the statute of limitations. Plaintiff's attorney first notified NJM on February 12, 1998, that plaintiff "would be presenting an uninsured motorists claim," and on June 29, 1998, he wrote that plaintiff "would like to proceed with [his] uninsured motorist claim[s]." In the latter letter he enclosed various documents to permit NJM "to begin to evaluate this claim." In addition, plaintiff informed NJM that he filed a lawsuit against the tortfeasor to protect the interest of NJM. A NJM claims representative wrote to plaintiff's counsel on October 8, 1998, that she was now handling plaintiff's claim and requested "copies of all medical bills and reports on [plaintiff] as they become available." During the next several years, NJM received various information necessary to evaluate plaintiff's claim, including a medical examination of plaintiff.
[Price, supra, 182 N.J. at 525, 867 A.2d 1181.]
The Court went on to hold,
In dealing with plaintiff, NJM was required to act in a fair manner and inform plaintiff if there were any deficiencies in his claim or if he needed to file a request for arbitration by a certain date. It was not reasonable for NJM to sit back, request and receive various documents over a three and one-half year period, and then deny plaintiff's claim because he failed to file a complaint in Superior Court or request arbitration *1234 prior to the running of the six-year statute of limitations. We agree with the Appellate Division majority that NJM had a duty of good faith to notify plaintiff if it disagreed with his understanding that NJM was duly acting upon his filed claim. We conclude that NJM violated the duty of good faith and fair dealing.
[Id. at 526, 867 A.2d 1181 (citations omitted).]
Principles of equitable estoppel and fair dealing do not support a tolling of the statute of limitations in this case. No mention of a possible UIM claim was made by plaintiff until after the statute of limitations had already run. Moreover, there was no reliance by B & F on any actions by the insured.
Although Rutgers received information regarding plaintiff's injuries, that information was provided specifically for plaintiff's medical expense or PIP claims, which were paid or separately adjudicated in the underlying PIP arbitration. There was nothing about the medical expenses, though, that put Rutgers on notice that a UIM claim would be forthcoming since there was no basis, other than conjecture, for Rutgers to have concluded that the tortfeasors' insurance coverage was insufficient to compensate plaintiff fully for his injuries. Rutgers had no reason to believe the taxicab did not have coverage that equaled or exceeded the UIM coverage of plaintiffs' own automobile insurance policy. There is also no evidence that B & F relied on any actions by Rutgers or correspondence from it that would have led Walsh or B & F to refrain from asserting or pursuing Walsh's UIM rights under the policy.
The remaining argument raised by B & F, that the plain language of the insurance contract requires a finding of UIM coverage, does not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] Rutgers argued that B & F lacked standing to assert Walsh's claim for UIM benefits and that Walsh did not personally assert the claim against it. Because Walsh contends B & F deviated from accepted professional standards by failing to assert the claim on his behalf in a timely fashion, there is no doubt that B & F has a sufficient stake and that its interest is sufficiently adverse to that of Rutgers for the court to take cognizance of its right to litigate the issue. See, e.g., New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Com'n, 82 N.J. 57, 67, 411 A.2d 168 (1980). If B & F prevailed on this issue, there would be no basis for Walsh's action against it for legal malpractice.