**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4293-19

CHRISTINE SHEILS,

    Plaintiff-Appellant,

v.

FCA US, LLC,

    Defendant-Respondent.

_____

Submitted April 26, 2021 – Decided June 24, 2021

Before Judges Sabatino and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1687-19.

Kimmel & Silverman, PC, attorneys for appellant (Shawn M. Bachman, on the briefs).

Marshall Dennehey, attorney for respondent (Kevin M. McKeon, on the brief).

PER CURIAM

    Plaintiff Christine Sheils appeals from the June 9, 2020 Law Division order granting summary judgment dismissal of her breach of warranty complaint

to defendant FCA US, LLC. Plaintiff also appeals from the July 23, 2020 order denying her motion for reconsideration.[1] Plaintiff's complaint alleged violations of the Magnuson-Moss Warranty Improvement Act (Magnuson-Moss Act), 15 U.S.C. §§ 2301 to 2312, stemming from her purchase of a new 2016 Jeep Cherokee Sport that was manufactured and warranted by defendant.[2] We affirm.

We recite the facts from evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, "giv[ing] the benefit of all favorable inferences to plaintiff[]." Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)).

On May 7, 2016, plaintiff purchased the Jeep Cherokee at issue from Atlantic Chrysler Jeep Volkswagen Fiat (Atlantic Chrysler), an authorized Jeep dealer in Egg Harbor Township.[3] As part of the purchase, plaintiff was issued

---

[1] Although plaintiff's notice of appeal identified the July 23, 2020 order, nowhere in her merits brief does plaintiff present any argument challenging the reconsideration order. As a consequence, plaintiff has effectively waived this argument on appeal. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

[2] Plaintiff's complaint also alleged violations of the New Jersey Lemon Law, N.J.S.A. 56:12-29 to -49. However, plaintiff voluntarily withdrew those claims.

[3] The contract price of the vehicle was $28,593.

various warranties for the vehicle.  Pertinent to this appeal, plaintiff was issued (1) a three-year/36,000-mile "Basic Limited Warranty" (basic warranty); (2) a "Corrosion Warranty"; and (3) a five-year/60,000-mile "Powertrain Limited Warranty" (powertrain warranty).

The basic warranty covered "the cost of all parts and labor needed to repair any item on [the] vehicle when it left the manufacturing plant that [was] defective in material, workmanship or factory preparation."  The "only exception[s]" were "tires and [u]nwired headphones."  The basic warranty specified that plaintiff would "pay nothing for these repairs" as the "warranty repairs or adjustments – including all parts and labor connected with them – [would] be made by [the] dealer at no charge, using new or remanufactured parts."

The basic warranty lasted "for [thirty-six] months" from the date of purchase[4] or for "36,000 miles on the odometer, whichever occur[red] first." However, the following items were "covered only for [twelve] months or for 12,000 miles on the odometer, whichever occur[red] first":

> brakes (rotors, pads, linings, and drums);

---

[4] The basic warranty described the start date as either "the date [the purchaser took] delivery of the vehicle; or the date when the vehicle was first put into service – for example, as a dealer 'demo' or as a FCA US company vehicle," "whichever [was] earlier."  The former applied to plaintiff's vehicle.

A-4293-19

wiper blades;
clutch discs or modular clutch assemble (as equipped);
windshield and rear window; and
wheel alignment and wheel balancing.

The corrosion warranty covered

the cost of all parts and labor needed to repair or replace any sheet metal panels that get holes from rust or other corrosion. If a hole occurs because of something other than corrosion, this warranty does not apply. Cosmetic or surface corrosion – resulting, for example, from stone chips or scratches in the paint – is not covered.

The corrosion warranty started when the basic warranty began. However, the corrosion warranty had two "time-and-mileage limits." "For sheet metal panels, the limit [was thirty-six] months, with no mileage limit." "For an outer-body sheet metal panel – one that is finish painted and that someone can see when walking around the vehicle – the limits [were five] years or unlimited miles on the odometer, whichever occur[red] first."

Finally, the powertrain warranty covered "the cost of all parts and labor needed to repair a powertrain component . . . that [was] defective in workmanship and materials." Powertrain components included the "[e]ngine," "[t]ransmission," and "[f]ront [w]heel [d]rive." Manual transmission clutch parts were not covered. The powertrain warranty lasted "for up to [five] years

A-4293-19

or 60,000 miles on the odometer, whichever occur[red] first, calculated from the start date of the [basic warranty]. . . ."

At her deposition, plaintiff testified that in October 2018, she began to notice that "[t]he front driver's floor . . . was getting wet" to the point where there was water on the soles of her shoes when she drove the vehicle. She testified that she started "driving with a towel" that she "used . . . to absorb the water" so that "[her] foot wouldn't slip on the gas and brake." As a result, plaintiff arranged to drop off the Jeep Cherokee at Atlantic Chrysler to fix the leak. When the vehicle was dropped off on December 6, 2018, it had 55,488 miles on its odometer.

After being informed that the vehicle was ready for pickup, plaintiff returned to the dealership on January 12, 2019, and, prior to inspecting the vehicle, paid $266.30 for the repairs. However, when plaintiff inspected the vehicle, she observed the "towel . . . [she] had been using [while driving] to sop up the water . . . frozen to the mat" on the floor of the vehicle. According to plaintiff, the mat "was soaking wet and frozen with ice all over" and "the towel was still in a bundle" on the floor. After plaintiff complained, she was issued an immediate refund of the $266.30 she had paid and left the vehicle at Atlantic

A-4293-19

Chrysler with the understanding that the dealership would continue to work on the car until it was fixed.

The Jeep Cherokee remained at the dealership from January to June of 2019. Atlantic Chrysler paid for plaintiff's rental car for about "[forty-five] or [sixty days]" during that period. While the vehicle was at the dealership, plaintiff had various phone conversations with Atlantic Chrysler's sales manager, during which plaintiff was informed that "[t]hey couldn't fix the car," "[t]hey couldn't find the problem," and "they were not able to locate the source of the leak." Plaintiff was also told that "they had to . . . get Chrysler involved" because there was a manufacturing defect.

On June 14, 2019, plaintiff picked up the Jeep Cherokee. Plaintiff acknowledged that the sales manager informed her that because the vehicle had over 55,000 miles on the odometer, it was "out of warranty." According to plaintiff, although the manager "never used the word goodwill," she eventually learned she would not be responsible for the repairs despite the expiration of the warranty. The invoice signed by plaintiff when she picked up the vehicle confirmed that the repairs were performed at "[n]o [c]harge" to plaintiff as "one time goodwill assistance offered to customer for satisfaction purposes." (Changed from all caps). The service record for the repairs performed from

December 6, 2018 to June 14, 2019, indicated that Atlantic Chrysler resealed the fender, the cowl cover, and rocker seams; cleared the rocker drains; sealed the body seams; and replaced the carpet.

After picking up the vehicle, plaintiff began having problems with the brakes that she had never experienced before. She also observed "mold" on the "front left mat" and the "seatbelt" on the front passenger side, as well as "rust" on "a pipe" "behind the gas [pedal]." According to plaintiff, the pipe "was totally rusted out with a hole in it from corrosion." Plaintiff testified that, initially, the manager was reluctant to work on the vehicle again. However, on June 24, 2019, he had the vehicle towed to Atlantic Chrysler for repairs, which were completed on July 23, 2019. The service record for that period indicated that the front and rear brake pads and rotors were replaced, the "right outer seatbelt assembly" was replaced, and the "interior bolts" were sanded and sprayed with rust repellant. When plaintiff picked up the vehicle, once again, she did not have to pay for any of the repairs.

Atlantic Chrysler submitted claims to defendant for the repairs to plaintiff's vehicle, including the water leak and brake repairs. Although the claim forms indicated that the "[c]laim [t]ype" was "[w]arranty," the

A-4293-19

reimbursements to Atlantic Chrysler from defendant were described as "Special Services LOPS; Goodwill Administration; Goodwill Authorization."

Plaintiff testified that after picking up the vehicle from the dealership in July 2019, she continued to have problems with the vehicle. She stated that although the dealership fixed the water problem on the driver side of the vehicle, she now has water on the "[r]ight front passenger [side]," but "[n]ot to the extent it was on the left [side]." Plaintiff never brought the vehicle back to Atlantic Chrysler for further repairs but continued to make monthly payments for the vehicle throughout the entire time period.

On July 3, 2019, plaintiff filed a complaint against defendant asserting claims under the Magnuson-Moss Act for manufacturing defects in her vehicle, failure to comply with express and implied warranties, and ineffective repair attempts despite plaintiff affording defendant a reasonable number of opportunities. The complaint alleged that "as a result of the ineffective repair attempts[,] . . . the vehicle [was] rendered substantially impaired, unable to be utilized for its intended purposes, and [was] worthless to plaintiff." Plaintiff sought "judgment . . . in an amount equal to the price of the . . . vehicle, plus all collateral charges, incidental and consequential damages, reasonable attorneys' fees, and all court costs."

A-4293-19

Following the completion of discovery, defendant moved for summary judgment, arguing there was no warranty violation because the basic warranty had expired when plaintiff first brought the vehicle into the dealership for repairs and the repairs were performed at no charge to plaintiff as a matter of customer goodwill. Plaintiff opposed the motion, asserting she met the threshold elements to prevail on her Magnuson-Moss Act claims because the repairs were covered by other warranties that came with the vehicle purchase, defendant classified them as such, and defendant failed to complete the repairs within a reasonable amount of time.

After conducting oral argument on June 5, 2020, the motion judge entered an order on June 9, 2020, granting defendant summary judgment and dismissing plaintiff's complaint with prejudice. In the accompanying statement of reasons, the judge recited the undisputed material facts and applied the applicable standards and principles of law, including viewing the evidence in the light most favorable to plaintiff. The judge concluded that based on the undisputed material facts, defendant was entitled to summary judgment "as a matter of law" because there was no applicable warranty covering plaintiff's reported complaints regarding the vehicle and "the evidence presented [was] so one-sided that it [did] not require submission to a jury."

A-4293-19

Specifically, the judge explained that the basic warranty did not apply because plaintiff did not notify the dealer until the vehicle had over 55,000 miles on the odometer and the basic warranty was limited to 36,000 miles. As to the other warranties at issue, the judge reasoned that there was

> no evidence in the record that shows that either the issues [p]laintiff complained about or the repairs made to fix the issues were covered by the Corrosion and Powertrain Limited Warranties. Plaintiff did not complain of any corrosion or issues with the powertrain components, and the service reports indicate that no work was done on such. Withstanding any determination of whether the warranties were full and therefore subject to the standards of the [Magnuson-Moss] Act, the warranties would not be available to [p]laintiff for her breach of warranty claim under the Act because they did not cover the subject issue.

The judge also rejected plaintiff's claim that under the Magnuson-Moss Act, specifically 15 U.S.C. § 2301(6)(B), "[d]efendant created an applicable written warranty" by indicating on the repair orders that "the repairs were claimed under warranty." According to the judge,

> the documents also indicated the repairs were made under "goodwill", and [p]laintiff was notified of such and authorized the repairs. Hence, the evidence instead shows that [d]efendant and the dealership considered the June and July 2019 repairs to be without warranty coverage and that [d]efendant paid the dealership for the repairs out of customer "goodwill." Plaintiff fails to provide or point out evidence that establishes a genuine issue of fact regarding whether [d]efendant

10

may be found liable under the [Magnuson-Moss] Act for the June and July 2019 repairs. For the [c]ourt to hold otherwise could expose manufacturers to damages when they perform goodwill repairs after a warranty expires, and in effect discourage manufacturers from performing such goodwill repairs.

Thereafter, plaintiff moved for reconsideration of the June 9, 2020 order, which was ultimately denied on July 23, 2020, for failure to "demonstrate that the court's decision was based upon a palpably incorrect or irrational basis or that th[e c]ourt either did not consider, or failed to appreciate the significance of the probative, competent evidence." See Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996). This appeal followed.

On appeal, plaintiff raises the following contentions for our consideration:

> I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE THERE WAS SUBSTANTIAL EVIDENCE OF DEFENDANT'S FAILURE TO FULFILL ITS WARRANTY OBLIGATIONS WHICH IT ATTEMPTED TO COVER-UP AS "GOODWILL."
>
> II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE IT IMPROPERLY WEIGHED THE EVIDENCE AND FAILED TO GRANT ALL FAVORABLE INFERENCES TO THE NON-MOVANT. (NOT RAISED BELOW).
>
> III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE DEFENDANT

11

WAS ESTOPPED FROM DENYING WARRANTY REPAIRS.

IV. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE "GOODWILL" AND "WARRANTY" ARE NOT MUTUALLY EXCLUSIVE.

V. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE THERE WAS SUBSTANTIAL EVIDENCE OF UNREASONABLE AND INEFFECTIVE WARRANTY REPAIRS.

We review a grant of summary judgment applying the same standard used by the trial court. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016). That standard is well-settled:

> if the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.
>
> [Ibid. (citations omitted) (quoting R. 4:46-2(c)).]

Summary judgment may not be defeated when the non-moving party merely points to "any fact in dispute." Brill, 142 N.J. at 529. Moreover, "conclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005) (citations

12

omitted).  Rather, to defeat summary judgment, the non-moving party must bring forth evidence that creates a genuine issue as to a material fact.  Brill, 142 N.J. at 529.

When determining if a genuine issue of material fact exists, courts must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Brill, 142 N.J. at 533 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-51 (1986)).  "Of course, there is in this process a kind of weighing that involves a type of evaluation, analysis and sifting of evidential materials.  This process, however, is not the same kind of weighing that a factfinder . . . engages in when assessing the preponderance or credibility of evidence."  Id. at 536.

If there is no genuine issue of material fact, we must "decide whether the trial court correctly interpreted the law."  DepoLink Ct. Rep. & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).  We review issues of law de novo and accord no deference to the trial judge's legal conclusions.  Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

13

Measured by this standard, we agree with the judge's determination that there were no disputed issues of material fact and defendant was entitled to summary judgment as a matter of law. Plaintiff maintains that there was "sufficient evidence . . . to conclude that [d]efendant is liable under the [Magnuson-Moss Act] for breaches of express and implied warranties" and "for failing to live up to its obligations to effectively repair these defects within a reasonable time under their . . . warranties." According to plaintiff, because "[t]he paperwork for all these repairs . . . reflect that the repairs were covered under warranty and paid for by [d]efendant," the "[c]ourt should not be fooled by [d]efendant's attempt to mislabel these warranty repairs as 'goodwill' on subsequent documents."

"The Magnuson-Moss Act is the federal statute that sets forth guidelines, procedures and requirements for warranties, written or implied, on consumer products." Temple v. Fleetwood Enters., 133 F. App'x 254, 268 (6th Cir. 2005). "[A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under . . . [the Act], or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief" in any competent state or federal court. 15 U.S.C. § 2310(d)(1).

Under the Act, "written warranty" is defined as:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

> which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

> [15 U.S.C. § 2301(6).]

An "implied warranty" under the Act is defined as one "arising under State law . . . in connection with the sale by a supplier of a consumer product."  15 U.S.C. § 2301(7).

To establish an actionable claim of breach of warranty or violation under the Magnuson-Moss Act, a plaintiff must demonstrate that "(i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the

seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." Temple, 133 Fed. Appx. at 268; see 15 U.S.C. § 2304(a)(1). "Ultimately, the applicability of the . . . Act is directly depend[e]nt upon a sustainable claim for breach of warranty." Temple, 133 Fed. Appx. at 268. "Thus, if there exists no actionable warranty claim, there can be no violation of the . . . Act." Ibid.

Here, plaintiff failed to present competent evidence that her complaints about the vehicle were covered by any warranty. If the complaints or repairs were not covered under warranty, there can be no violation of the Act. To that end, it is undisputed that plaintiff's complaints were reported when the vehicle had over 55,488 miles on its odometer, well beyond the 36,000-mile limit of the basic warranty. Further, none of the complaints or repairs involved a powertrain component that was subject to the powertrain warranty.

Additionally, plaintiff presented no evidence, expert or otherwise, that holes were created in sheet metal panels from rust or other corrosion to fall under the corrosion warranty. Without support, plaintiff asserts that because "[t]he fender, cowl, and rocker sheet metal are notoriously prone to corrosion and rust holes," a "reasonable inference follows that the holes that needed to be resealed

16

in the fender, cowl, and rocker seams were caused by rust or other corrosion, and were thus required to be repaired under [d]efendant's corrosion warranties." However, such conclusory and unsupported statements are inadequate to defeat summary judgment. See Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012) ("Bare conclusory assertions, without factual support in the record, will not defeat a meritorious application for summary judgment.").

Plaintiff also argues that "[d]efendant breached the implied warranty of merchantability for the sale of the [v]ehicle." To establish an implied warranty of merchantability claim with respect to a motor vehicle, a plaintiff must prove that the vehicle was not "fit for the ordinary purposes for which such goods are used." N.J.S.A. 12A:2-314(2)(c). The ordinary purpose for which a car is intended is transportation. Here, plaintiff failed to prove that the vehicle was not merchantable because she drove the car for 55,488 miles before reporting a problem.

To support her claims, plaintiff points to documents provided by defendant that refer to the repair work as "warranty." However, plaintiff's position is undermined by the fact that defendant indisputably paid the dealership for the repair work as goodwill assistance offered to the customer for

17

satisfaction purposes, a fact acknowledged by plaintiff when she picked up the vehicle on June 14, 2019.

Equally unavailing is plaintiff's contention that "[d]efendant is estopped from denying the applicability of the warranty" because of defendant's "ratification, designation and payment." Estoppel is an equitable doctrine "designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment." Marsden v. Encompass Ins. Co., 374 N.J. Super. 241, 249 (App. Div. 2005). "To establish equitable estoppel, plaintiff[] must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiff[] acted or changed [her] position to [her] detriment." Ibid. (citing Miller v. Miller, 97 N.J. 154, 163 (1984)).

Here, there is no evidence that defendant or the dealership engaged in conduct or made a representation to plaintiff indicating that the repairs were covered by warranty or that plaintiff relied on such conduct or representation to her detriment. On the contrary, plaintiff acknowledged during her deposition that when she picked up the vehicle on June 14, 2019, the sales manager informed her that she would not be responsible for the repairs despite the fact that there was no warranty coverage.

A-4293-19

Because plaintiff failed to establish that the reported complaints and repairs were eligible for warranty coverage, her claim under the Magnuson-Moss Act must fail. To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION